[Sac. No. 1836.   In Bank.—June 29, 1912.]

ROSA McKAY, Special Administratrix of the Estate of Julia D. Ferguson, Deceased, Respondent, v. FRANCES HELEN GESFORD, Appellant.

FINDINGS—ERRONEOUS CONCLUSION DRAWN FROM FINDINGS OF PROBATIVE FACTS.—An ultimate finding of fact, which is drawn as a conclusion from the probative facts previously found, cannot stand if the specific facts upon which it is based do not support it.

HOMESTEAD—CONDUCTING HOTEL FOR PURPOSE OF MAINTAINING HOME—BONA FIDE RESIDENCE IN HOTEL BUILDING.—A homestead declared by a married woman on her separate property for the benefit of herself and husband, is not invalidated by the fact that at the time of the declaration, for the purpose of maintaining a home for themselves, she conducted a hotel and boarding-house in a small dwelling situated on the property, which then was and continued to be their sole and *bona fide* residence.

ID.—WANT OF PERMANENT OCCUPANCY OF PARTICULAR ROOMS.—The fact that the spouses did not permanently occupy one or more rooms in such building, but shifted themselves about as the exigencies of their business demanded, did not warrant a determination that the building was not their place of residence.

ID.—LIBERAL CONSTRUCTION OF HOMESTEAD LAWS—BUSINESS SUBORDINATE TO MAINTAINING HOME.—Under the rule of liberal construction applicable to the homestead laws, in every permissible case where the premises are the *bona fide* home of the parties, it should be held that the business conducted within the premises is the incidental and not the paramount purpose, and is conducted for the paramount purpose of enabling the parties to maintain a home.

APPEAL from a judgment of the Superior Court of Modoc County.   John E. Raker, Judge.

The facts are stated in the opinion of the court.

J.   H.   Stewart, and White, Miller & McLaughlin, for Appellant.

N. A. Cornish, for Respondent.

THE COURT.—This action is in ejectment. It was brought by plaintiff as special administratrix of the estate of Julia D. Ferguson, deceased, claiming that certain real property belonged to the estate of her intestate.

Defendant admitted that the property in question had originally been the separate property of Julia D. Ferguson but averred and showed that Julia D. Ferguson, while the wife of A. H. Ferguson and while she with her husband was residing in the house upon the land in controversy, filed her declaration of homestead for the joint benefit of herself and her husband.   Julia D. Ferguson having died it is conceded that the property passed to the surviving husband (Civ. Code, secs. 1263, 1265; Code Civ. Proc., secs. 1474, 1475), if at the time of her death there was, under her homestead declaration, a valid subsisting homestead upon the property.   Defendant and appellant is the grantee of the husband, claiming title by deed executed by the husband after the death of his wife.

The court made voluminous findings and from them reached the conclusion that in law the homestead declaration was invalid.   Judgment passed for plaintiff and from that judgment and upon the judgment-roll defendant appeals, contending that the findings do not support the judgment.

The findings are that in 1884 Julia D. Ferguson, then Julia D. Edwards, a spinster, owned the land in controversy, and in 1884 constructed a building thereon consisting of four rooms "as and for a hotel, and to keep boarders and lodgers as she could accommodate."   In 1888 she married A. H. Ferguson.   At the time of her marriage she was residing "on said premises in the hotel building thereon, and continued to keep such boarders and lodgers as could be accommodated in said hotel building, and to run said hotel and hotel business with all the customers, boarders and lodgers that could be obtained."

In 1891 or 1892 she "built two additional rooms on to said
hotel building." She continued thus in occupancy and use
of the premises until her death. After her marriage with her
husband in 1888 she with her husband continuously resided
upon the premises and "in the hotel building thereon," and
this was their sole and only home and residence. She was
so residing with her husband upon the premises when in 1894
she made the homestead declaration in due and regular form
claiming the premises as a homestead for the joint benefit
of herself and her husband. This homestead declaration was
duly acknowledged and recorded. "From the time of the
erection of said hotel building on said premises described in
the complaint, in the year 1884 and up to the 1st day of
January, 1895, the said Julia D. Ferguson conducted a hotel
on said premises, and her residence upon said premises and in
said building was but incidental to the running of said hotel;
and that the said building and premises were used primarily
and principally as and for a hotel, and not otherwise." Dur-
ing all of this time "Julia D. Ferguson performed the princi-
pal labor necessary to keep the said hotel, did the cooking
and waiting on table, and otherwise attended to the wants
of her boarders and lodgers; but at times hired a cook and
waiter girls, and other help, when necessary to run said hotel;
and after her marriage to the said A. H. Ferguson, the said
A. H. Ferguson when not otherwise engaged would give his
help and assistance to his wife in and about the said hotel
in doing the work and in conducting the same." "Said
hotel building was not dedicated to residence purposes
primarily, and was actually used by said Julia D. Ferguson
and was occupied for business purposes, for the accommoda-
tion of the public. . . . No particular room or rooms on the
premises were reserved for the exclusive use of said Julia D.
Ferguson and her husband, or either of them, but that she
and her husband used any of them for themselves as was
convenient, when not needed to be used by their boarders and
lodgers, and that no particular portion of the premises was
used exclusively, primarily, or principally for a home by
either of them." "A sign bearing the words 'Star Hotel'
was continually kept on the building from the time of its
construction, and a bell was rung at regular intervals at meal
hours to call persons to meals; that occasionally advertise-

ments of the Star Hotel were published in a newspaper by
said Julia D. Ferguson, and that Julia D. Ferguson solicited
many of the business men of the town to send her patronage
to her hotel.'' At no time were the premises of a greater
value than one thousand dollars. The residence of Julia D.
Ferguson before her marriage and of herself and her hus-
band after their marriage upon the premises in question ''had
been and was but incidental to the running of the hotel busi-
ness and conducting of a hotel business thereon; and the said
building on said premises was used and occupied by said
Julia D. Ferguson and by said Julia D. Ferguson and said
A. H. Ferguson, at all the times herein specified and found
in these findings, primarily and principally and chiefly as
and for a hotel to accommodate the public, and not other-
wise.'' Finding XX: ''That said lands and premises,
together with the building thereon known as the Star Hotel,
being occupied and used as hereinbefore found, primarily
and principally and chiefly as and for a hotel and doing a
hotel business, and the residence of the said Julia D. Fergu-
son and A. H. Ferguson in said hotel and on said lands and
premises being but incidental at all times to the running of
said hotel and not primarily and principally as a home, said
house known as the Star Hotel, and the land and premises
which it occupied, being the lands and premises described
in the complaint, was not, nor was any part thereof, im-
pressed as a homestead and with the homestead character
as homestead property, and was not a valid homestead. And
said building known as the Star Hotel, and the premises being
occupied and used as hereinbefore found, could not be im-
pressed with the title and character of a valid homestead in-
terest, nor was it thus impressed, and it did not exist as a
valid or any homestead of said Fergusons, or of either of
them.''

All of the above quotations are from the findings, and by
finding XX quoted *in extenso* it will be seen that the court
there makes its ultimate finding of fact from the probative
facts previously found. It is, of course, well settled that a
general and ultimate finding such as that declared in finding
XX which is drawn as a conclusion from facts previously
found, cannot stand if the specific facts upon which it is
based do not support it. (*Savings & Loan Soc.* v. *Burnett,*

106 Cal. 514, 540, [39 Pac. 922]; *McDonald* v. *Randall,* 139 Cal. 254, [72 Pac. 997].)

The question then before us is whether the ultimate finding of the court,—namely, that by reason of the facts previously found, the property could not be impressed with the homestead characteristic, is or is not supported. It was recognized at a very early day that questions of difficulty would arise under our homestead law touching the character of the property sought to be exempted under its provisions. (*Ackley* v. *Chamberlain,* 16 Cal. 181, [76 Am. Dec. 516].) It is there said "that the question whether property devoted chiefly to business purposes can be subjected to a homestead claim is full of embarrassment." But when it is borne in mind that the homestead law is a beneficent law calling for liberal construction (*Heathman* v. *Holmes,* 94 Cal. 291, [29 Pac. 404]), we think all difficulty will be removed and all doubt resolved by the following suggestion: If under these identical circumstances of ownership of the property, of the construction of the building thereon and of the use of that building, Mrs. Ferguson, instead of being a married woman with a husband, had been a widow with minor children to support, and an attack had been made upon a declaration of homestead which she had duly made and recorded upon the property, would any court say, or would any one say, that, notwithstanding that it was the residence and sole and only home of herself and babies it could not be impressed with the homestead characteristics because the principal purpose and use of the premises was its conduct by her as a hotel or boarding-house in order that she might thus support herself and babies and give them a home? But the law is no different if you substitute a husband for the babies. The dominant and controlling fact still remains that this was the residence and home of the family, that it was suitable for the purpose and was used for the purpose. We are not in this case embarrassed by difficulties which have arisen in other cases where the character of the business maintained is one entirely foreign to the conception of a home, if not repugnant to it—such a case, for example, as is instanced by Chief Justice Field in *Ackley* v. *Chamberlain,* 16 Cal. 181, [76 Am. Dec. 516], of an effort to impress a gas factory with homestead characteristics because the owner lived in it. Here

the very business which was carried on was conducted for the purpose of maintaining the home, for if this be not so then it must follow that any widow seeking to support herself and perhaps her children by taking boarders or lodgers under circumstances where it can be truly said that the principal business conducted upon the premises is that of a lodging-house or a boarding-house cannot have a homestead, although she is conducting this very business so as to maintain herself and her offspring in a home. Each case of this character stands by itself and is to be governed by its own facts. Our own cases have passed recently under review in *Estate of Levy,* 141 Cal. 646, [75 Pac. 317]. Without again reviewing them, it is sufficient to refer to this case. Therein, after extended consideration of our decisions, and amongst them *Heathman* v. *Holmes,* 94 Cal. 291, [29 Pac. 404], where it is said: "Using a building partly or even chiefly for business purposes, or renting part of it, is not inconsistent with the right of homestead; provided it is and continues to be the *bona fide* residence of the family," this court said: "These cases are all authority for the proposition that if a building is the actual *bona fide* residence of a party, he may legally select it and the land on which it is situated as a homestead, even though, incidentally, a part thereof, no matter how large, may be used by him for other purposes than those of family residence. There is no decision of this court in conflict with this view."

Under the rule of liberal construction which it has been repeatedly declared should be extended to homestead laws, in every permissible case where the premises are the *bona fide* home of the parties, it should be held that the business conducted within the premises is not the paramount and principal purpose but the incidental and subordinate purpose, that the home is the main thing not the business; that the business is conducted to enable the parties to maintain a home and not that the parties are incidentally inhabiting the premises for the purpose of maintaining the business. Especially is this true in such a case as the one at bar where it appears from the findings that the parties during all their married life never had any other home than their six-room hotel. Nor is it of determinative import that they occupied one or another of these six rooms or shifted themselves about

as the exigencies of their business demanded. In some cases the actual occupancy of a room or rooms in a building has become important as evidence showing residence. These were cases like *Skinner* v. *Hall,* 69 Cal. 195, [10 Pac. 406], and *Heathman* v. *Holmes,* 94 Cal. 291, [29 Pac. 404], but in this case the permanent occupancy of one or another room is of no material signficance, since it is shown that these spouses either lived and made their home and residence upon the premises in controversy or they lived and made their home and residence nowhere.

It follows from the foregoing that the ultimate finding of the court to the effect that the property could not be impressed with the characteristics of a homestead is not supported by the specific facts upon which the finding is based and that the judgment itself is, therefore, unsupported by the findings.

Wherefore the judgment appealed from is reversed and the cause remanded with directions to the trial court to enter its judgment for the appellant.

Beatty, C. J., does not participate in the foregoing.