[Civ. No. 6018.   First Appellate District, Division One.—October 29, 1927.]

KEITH FERGUSON, Appellant, v. CASPER GARDNER et al., Respondents.

Jordan L. Martinelli and Keith Ferguson, *in pro. per.*, for Appellant.

Henry E. Greer, District Attorney, for Respondents.

PARKER, J., *pro tem.*—Plaintiff, as a taxpayer, commenced an action against defendants, seeking certain relief to be herein more fully detailed. Defendants filed a general demurrer to the complaint, which demurrer was sustained by the court below and plaintiff was allowed ten days to amend. Plaintiff declined to amend, and, the time elapsing, a judgment was entered that plaintiff take nothing and that the relief sought be denied.

The question before us for review is on the sufficiency of the complaint as against a general demurrer.

The complaint alleges: That the plaintiff is a citizen, resident, and taxpayer and at all times was such in supervisor district No. 1 of Marin County, alleging, likewise, the division of the county into supervisor districts as by law provided.

That the defendants named constitute the board of supervisors of said Marin County, and that the additional defendants are treasurer and auditor of Marin County, the remaining defendant being a person who was a supervisor at the time of the proceeding complained of but since out of office.

Then follow the allegations by which the cause of action is sought to be embodied, namely:

That the defendant supervisors, excepting Barr, constituting four-fifths of the members of the board, did at a regular meeting on Thursday, September 2, 1924, with the intent to violate the provisions of the Political Code of this state and without authority of law and with the intent to violate the rights of the plaintiff as a citizen of Marin County, and with the unlawful intent to oppress plaintiff and the citizens of supervisor district No. 1 of Marin County and to compel him and them to bear more than his and their just share of the burdens of taxation, and with the intent to unfairly and unjustly assess against the taxable property of plaintiff and the taxpayers of supervisor district No. 1 a part of the cost of permanent road construction in Marin County not lying within the territorial limits of said supervisor district No. 1, levy a special tax, to wit, a tax of fifty cents upon each one hundred dollars of assessed valuation on all taxable property in Marin County for the unlawful purpose and with the fraudulent intent of wrongfully and unlawfully raising a fund to be expended for permanent road improvement and construction in that portion of Marin County outside of the territorial limits of supervisor district No. 1, and with the fraudulent intent and purpose of levying a tax for the creation of a fund for permanent road improvement and construction in Marin County.

Plaintiff further alleges that for the purpose of concealing and disguising the unlawful purpose of said special tax, and with the fraudulent, unlawful, and wrongful intention of violating the rights of plaintiff and oppressing plaintiff and the citizens and taxpayers of supervisor district No. 1, and of unfairly and unjustly compelling him and them to pay more than his and their just share of taxation, and with intent to unfairly and unjustly assess against the taxable property of supervisor district No. 1 a part of the cost of permanent road improvements and construction in Marin County outside of the territorial limits of supervisor district No. 1, the said supervisors wilfully, knowingly, wrongfully, unlawfully, and fraudulently caused said special tax to be levied with and as a part of the general fund of eighty cents upon each one hundred dollars of assessed valuation of all taxable property in Marin County for the year 1924, said

defendants knowing and in fact having decided then and there that a levy of thirty cents upon each one hundred dollars of the assessed valuation of all taxable property in Marin County for the year 1924 was a sufficient tax levy to raise money sufficient to defray the general expenses of said county during the period for which said tax was levied.

That said action of the board of supervisors in levying said fifty-cent tax under the name and style of "General County Fund" and including said fifty-cent tax in said levy of eighty cents as and for said general county fund was a scheme, fraud, and subterfuge to evade the laws of the state of California and to create a fund for permanent road improvement and construction in Marin County for the construction and improvement of the main county public road lying without the territorial limits of supervisor district No. 1, contrary to law.

The complaint then further sets forth the collection of the tax pursuant to the assessment and levy, and further that the board of supervisors of Marin County has, in the execution of the original plan of road building, let numerous contracts for the furnishing of materials and performance of permanent road improvement and construction and repairs in Marin County, outside of the territorial limits of supervisor district No. 1, and that the cost of this work has been wilfully and unlawfully charged to the moneys in the general fund derived and collected by the levy of the fifty-cent tax aforementioned, and further alleges many claims against said fund by reason of similar work.

Further it is alleged that defendants will, unless restrained, continue the acts complained of, namely, the execution of road contracts outside supervisor district No. 1, and the payments to the exhaustion of the fund.

The relief asked is that the court adjudge that the eighty-cent general county tax includes the fifty cents special tax, raised for the purpose of creating a fund for the doing of permanent road improvements in Marin County, and that the tax levy of fifty cents be declared null, void, and of no effect; that the supervisors be enjoined from allowing and the auditor and treasurer from auditing and paying demands against said fund, and that any balance in said fund be repaid to plaintiff and the other taxpayers within the county of Marin.

It may be here repeated that all of the acts of the board of supervisors throughout are characterized as having been wrongful, fraudulent, oppressive, evasive, and with intent to evade the laws of the state of California, and oppressive as to the plaintiff and the taxpayers in general.

The complaint is thus set forth in its particularity to the end that the subject matter of the controversy may be more intelligently discussed and understood.

The question raised concerns the power of the board of supervisors in making the original levy for general county purposes.

Summing up the allegations of the complaint, this situation is disclosed: The supervisors at the time appointed for fixing the annual tax rate determined that the amount that could be legally raised by a tax levy for road purposes would not suffice for the general highway needs of the county. The board, apparently feeling that throughout the ensuing year there would arise occasions when general road construction costs would have to be paid from the general fund, therefore fixed a rate sufficient to assure a general fund which would meet the demands foreseen.

At the outset it may be stated that the allegations of fraud, wrong, and oppression add nothing to the force of the complaint and the complaint is in no way strengthened by the conclusions of the pleader thus expressed. Mere general allegations of fraud are insufficient in stating a cause of action; the pleader must state the specific acts or language constituting the fraud complained of. General allegations that certain acts or proceedings are illegal or void are mere conclusions of law, and wholly insufficient in the absence of facts from which such conclusions will follow as a matter of law. For example, such averments as the following have been held to be legal conclusions, viz., that a certain tax or assessment was illegal and void, or was not levied in accordance with law, or that the tax valuation on the property was unequal and unjust (5 Stand. Ency. of Proc., 217; *Carlson* v. *County Com.*, 36 Wash. 616 [80 Pac. 695] ; *Osborn* v. *Hoyt,* 181 Cal. 336 [184 Pac. 854] ; *Glen* v. *California Trona Co.,* 38 Cal. App. 601 [177 Pac. 178]).

The contention of plaintiff and appellant is that the levy of the fifty-cent tax was for permanent road improvements outside of supervisor district No. 1, and the inclusion of this

tax within the amount levied for the general county fund was obviously a subterfuge and an evasion.

The appellant seems to rely upon the sections of the Political Code having to do with the levy of taxes and the creation of funds to be devoted exclusively to road and highway purposes, namely, sections 2639, 2653, 2654, 2655, and 4041.

Section 2639 provides, in enumerating the powers and duties of supervisors over highways, that the supervisors must by proper order—

Levy a tax on property for road purposes, and

Cause the road tax collected each year to be apportioned to the several road districts entitled thereto, and kept by the county treasurer in separate funds.

Section 2651 of the Political Code reads: "The board of supervisors may, at the meeting at which they are required to levy the property tax for road purposes, establish a general road fund and order to be apportioned thereto an amount not exceeding thirty-five per centum of the aggregate road tax collection from all sources."

Section 2653 of the Political Code reads: "The board of supervisors must each year at the meeting at which they are required to levy the property tax for county purposes estimate the probable amount of property tax for highway purposes which may be necessary for the ensuing year, and must regulate and fix the amount of property highway tax, and levy the same thereby, provided, that said property tax for highway purposes shall not exceed the sum of forty cents upon each one hundred dollars of assessable property in any one year."

Section 2654 provides the method of assessment, levy, and collection of the annual property tax for road purposes, and provides that the moneys thus collected shall be turned over to the county treasurer for the use of the road districts from which it is respectively collected.

Section 2655 provides that all property road tax collected in each road district shall be expended for road purposes within the district in which it is collected.

Section 4041: The board of supervisors in their respective counties shall have jurisdiction and power, under such limitations and restrictions as are prescribed by law.

Subdivision 13. To levy taxes upon the taxable property of their respective counties for all county purposes, and also

upon the taxable property of any district for the construction and repair of roads and highways and other district purposes; provided, that no tax shall be levied upon any district until the proposition to levy the same has been submitted to the qualified electors of such district and received a majority of all the legal votes cast.

Subdivision 38. To levy a special road fund tax, not to exceed two mills on the one dollar of assessed valuation on all property in such counties outside of any incorporated city or town. Such tax shall be in addition to all taxes otherwise provided for, and the funds so created shall be expended for the construction and maintenance of the main public roads or county highways in the several road districts in proportion to the amount collected from such districts; provided that in addition to the tax mentioned in this subdivision the board of supervisors shall have the power, and it shall be their duty upon petition of a majority of the property owners of any road district, to levy a special road fund tax, not to exceed two mills on the one dollar of assessed valuation, on all property in such road district, to be expended in the maintenance of the public roads of such district.

We have incorporated these code provisions herein for the reason that appellant contends that in these sections is to be found the source of whatever taxing power may be in the board of supervisors to raise funds by direct taxation for use in the acquiring, construction, or maintenance of public roads or highways within the various counties of the state. It is appellant's theory that the legislature intended by the enactment of these sections to specifically limit the taxing power of the supervisors to the extent set forth. He urges that the provisions found in the sections cited are all-embracing and embody the complete grant of power to the supervisors as far as the subject of roads and highways within a county is concerned, and that there is no way authorized by law through which the taxpayers, directly or indirectly, may be compelled to assume the burden of road maintenance through taxation other than as therein stated. Here it may be incidentally stated that the subject of bonds or bonding is not under discussion and is particularly disregarded for the purposes hereof.

■ Without detailing appellant's argument we can concede that whatever taxing power rests in the supervisors must necessarily come from the legislature and be expressly given. Abundant authority supports this conclusion. (*Estate of Potter,* 188 Cal. 55 [204 Pac. 826]; *Connelly* v. *San Francisco,* 164 Cal. 101 [127 Pac. 834]; *Merced Co.* v. *Helm,* 102 Cal. 159 [36 Pac. 399]; 24 Cal. Jur. 26.) The statute not only confers the power but affords the measure thereof, and taxes not assessed in accordance with the provisions of the statute are void (*Huntington* v. *Central Pac. R. R.,* 2 Sawy. 503; Fed. Cas. No. 6911; *Moss* v. *Shear,* 25 Cal. 38, 85 Am. Dec. 94).

The statutes quoted do, however, in addition to providing for road funds, specifically confer upon the supervisors the power to levy taxes upon taxable property of their respective counties for all county purposes. As alleged in the complaint, the supervisors of Marin County did levy a tax for general county purposes and fixed the rate of such tax at eighty cents on each one hundred dollars of taxable property, which sum, when collected, constituted what is known as the county general fund. It is conceded that there is sufficient and specific grant of power authorizing the board of supervisors to levy such a tax and create such a fund, and that such a fund may be used for general purposes.

We must presume that all conditions precedent to the levy of the tax for general purposes were complied with (Cooley on Taxation, sec. 1017, and cases cited).

The rate of taxation which the supervisors of the various counties may fix is not limited by statute, the power to tax being expressly conferred upon the board of supervisors without restriction as to the amount to be raised thereby for general county purposes. The statutes of the state provide for detailed statements to be presented to the supervisors by the various county officers at stated intervals to the end that the board may be constantly aware of the financial condition of the county and the needs thereof. No question is presented here as to the power of the board of supervisors to fix a tax rate for general county purposes sufficient to raise an amount equal to that required to meet the general running expense of the county for the ensuing year. It is not here urged or pleaded that the rate fixed by the board in the instant case, to wit, eighty cents on each one hundred

dollars of taxable property within the county, is unreasonable or excessive. It must be conceded in the instant case that if the board of supervisors of Marin County determined that the rate fixed for general county funds was necessary to meet the anticipated needs of the county it is not within the province of the courts to inquire further into these necessities. Indeed, it would be a useless procedure and an assumption of power not resting in the judicial branch of government.

Appellant contends in this respect that the board did determine that the rate of eighty cents on the hundred dollars was not necessary, but that a rate of thirty cents on the hundred dollars was sufficient, and that the difference, fifty cents, was levied as and for the general fund by way of subterfuge and to evade the controlling provisions hereinbefore cited which limit the power of the board in raising funds for road purposes. He alleges that the board, after determining the lesser amount sufficient, then resolved that there should be raised the additional fifty cents on each one hundred dollars of taxable property "for the purpose and intent of wrongfully and unlawfully raising a fund to be expended for permanent road improvement and construction in that portion of Marin county not included in or incorporated within the territorial limits of Supervisor District No. 1, to wit, for the construction and improvement of the main public county road lying between Manor and the boundary lines of Road Districts Nos. 4 and 5 westerly from Milleston on Tomales Bay in said Marin county."

Section 2640 of the Political Code, at the time of the levy, read as follows: "Whenever it is determined by a four-fifths vote of the board of supervisors of any county that the public necessity and convenience require the acquisition or construction of a new road or the grading, regrading, paving, macadamizing, surfacing, repairing or maintaining of any existing road, and that the cost of such new road when acquired and constructed, or the cost of grading, regrading, paving, macadamizing, surfacing, repairing or maintaining such existing road, is too great to pay out of the road fund of the district, the board of supervisors may by resolution passed by a four-fifths vote of said board determine to acquire or construct such new road, or grade or regrade,

pave, macadamize, surface, repair or maintain such existing road and charge the cost thereof to the general fund."

The appellant contends that this section is to be read apart from and in nowise connected with the sections hereinbefore referred to, and that it has no reference to the taxing power or the means by or through which the funds that may be required under this section are to be raised. His argument seems to be that while the general fund of the county may be used to defray costs of road construction or repair and maintenance, the supervisors may not anticipate the necessities therefor and provide a general fund sufficient to meet them. Such a construction would render the section meaningless, for the reason that if in any one fiscal year there should be insufficient funds in the general fund to meet conditions as might arise under this section the board would be powerless to make any future levy. In the very nature of things it is incumbent upon the board, in fixing the general rate of taxation, to provide for and anticipate every legitimate expense that might arise. As a general scheme of finance and revenue it is contemplated that the tax rate shall be sufficient to provide sufficient funds for the entire fiscal year, and the activities and progress of the county are dependent upon the rate being adequate. The idea is elemental and is manifest in the constitutional provision limiting the county in incurring liability exceeding the income provided for the year (Const., art. XI, sec. 18).

We conclude that the board of supervisors had the right and power when fixing the rate of taxation for general purposes to determine the amount necessary to be raised thereby, and in determining the amount it was proper and legal that they should anticipate every requirement, including such expense as might arise under section 2640; and the fact that the board may have had in mind or by resolution expressed any intention to expend the moneys obtained in any certain way would neither add to nor take away from the legality of the levy. Mr. Cooley, in his work on Taxation, supporting his text by abundant and authoritative citations, says: "If a lawful tax can be defeated because the power which is manifested by its imposition may when further exercised be destructive, it would follow that every lawful tax would become unlawful and therefore no taxation whatever could be levied. The financial needs of a county may

outrun any human calculation, so the power to meet those needs by taxation must not be limited even though the taxes become burdensome. The judiciary can afford no redress against oppressive taxation so long as the legislature in imposing it shall keep within the limits of legislative authority and violate no express provision of the constitution." (Cooley on Taxation, 4th ed., sec. 72.)

The plaintiff is not left without redress, nor can the funds raised be dissipated or expended to his injury. Whenever any expenditure is made or threatened which is without warrant or authority of law the courts are always solicitous of the taxpayer's prayer and full protection and relief are accorded.

In so far as the complaint herein prays injunctive relief against further expenditure of the funds, it does not appear but that the provisions of section 2640 have been and are being fully complied with, and that the exact situation exists as in the section contemplated and that situation determined by the board of supervisors to exist in Marin County.

There is no allegation in the complaint as to the condition of the funds in the various districts; neither is there any allegation that the public convenience and necessity does not demand the construction, repair, and maintenance of the roads contemplated. In fact there are no allegations sufficient to sustain the prayer for the relief asked or for any relief if, as we have found, the levy for the general fund was legal.

Appellant cites the case of *Spitzer* v. *Munroe County,* 274 Fed. 819. A reading of this case will show that it has no application to the case at bar. Detached statements would in a measure support the contention of appellant, but taken as a whole it throws no light upon the question here involved.

We think it well settled as the policy of this state expressed in various legislative enactments that the acquisition, construction, maintenance, and repair of roads and highways are undisputed functions of government. In many instances it is readily apparent how impracticable and impossible it would be to restrict all progress or improvements to the old idea of purely local or district benefit and liability. The general law, in addition to section 2640, makes abundant provision for the general fund of the county bearing this expense, and the entire body of the law comprises

the general road improvement scheme of the state. (Secs. 2712, 4041, 4043, Pol. Code.)

Judgment affirmed.

Knight, Acting P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on November 28, 1927.