[Civ. No. 17099. Third Dist. Nov. 21, 1978.]

WILLIE LEE BROWN, Plaintiff and Appellant, v.
STATE DEPARTMENT OF HEALTH, Defendant and Respondent;
JEROME A. LACKNER, as Director, etc., et al., Real Parties in Interest
and Respondents.

WILLIE LEE BROWN, Plaintiff and Appellant, v.
BOARD OF MEDICAL QUALITY ASSURANCE, Defendant and
Respondent;
JOSEPH COSENTINO, as Executive Secretary, etc., et al., Real Parties
in Interest and Respondents.

550

**COUNSEL**

Beeman, Bradley, Brown & Beeman and William L. Beeman, Sr., for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Joel S. Primes, Deputy Attorney General, for Defendants and Respondents and for Real Parties in Interest and Respondents.

**OPINION**

**REYNOSO, J.**—We deal with the imposition of discipline against appellant, Dr. Willie Lee Brown, by the State Department of Health

(Department) and by the Board of Medical Quality Assurance, Division of Medical Quality (Board). Appellant comes to us after the superior court declined to issue writs of administrative mandate against either of the two agencies. Thus, the court sustained the Department's determination that appellant violated California Administrative Code section 51470 by his submission of bills for services not personally rendered. Additionally, the court sustained the Board's determination that appellant had engaged in unprofessional conduct in violation of Business and Professions Code section 2411.

On appeal we are asked to review three principal questions: (1) Was Dr. Brown's conduct sufficiently serious to warrant discipline by the Board? (2) Did the Department[1] abuse its discretion by suspending Dr. Brown's right to treat Medi-Cal patients? and (3) Is mistake of law a defense?[2] We affirm the judgment denying the petitions for writs of administrative mandate against either the department or the board. We explain below that our review focuses on the entire administrative record and not on the characterization given the evidence by the administrative law judge.

## 1. History of the Case

We can date Dr. Brown's troubles from September and October 1974, when first the Board, and then the Department, filed their accusations.

First, in September 1974, an accusation was filed before the board to suspend or revoke the certificate issued to Dr. Brown. The accusation charged Dr. Brown with violations of the Business and Professions Code as well as violations of the Welfare and Institutions Code. In 11 of 17 counts Dr. Brown was charged with billing Medi-Cal for surgery performed by other physicians, and in the remaining 6 he was charged with billing Medi-Cal for delivering babies which were delivered by other physicians.

---

[1]Appellant erroneously names the board as the agency which imposed the suspension.

[2]Two additional but meritless matters are raised. First, appellant protests that he was not convicted of an offense within the meaning of Business and Professions Code sections 490 and 2382 (conviction of a crime involving moral turpitude). In fact, the discipline was not based on violation of those code sections. Second, appellant charges that the trial court refused to read the administrative record. In fact, the trial judge indicated that he would read the entire administrative record and asked counsel to assist him by indicating the relevant portions of the record.

Second, in October 1974, an accusation was filed against Dr. Brown with the Department, seeking to have Dr. Brown suspended as a provider of services in the Medi-Cal program. The accusation totaled 16 counts, charging that Dr. Brown had billed Medi-Cal for surgery on 10 patients which had been performed by other physicians, and for 6 deliveries performed by other physicians.

Dr. Brown requested an administrative hearing on the accusations and the matters were consolidated for hearing before an administrative law judge. The administrative law judge heard oral testimony and received documentary evidence.

Dr. Brown's defense respecting the matters proved unavailing. With respect to the accusation that he had not performed surgeries for which he billed, Dr. Brown admitted that he had not performed the surgeries, but testified that he was present, observing and supervising. He testified that he believed that he could properly bill for the surgeries since he was a teaching physician of the Valley Medical Center. Further, an ad hoc committee of doctors had recommended that physicians charge for surgery when supervising. With respect to the charge that he billed for deliveries not performed, Dr. Brown testified that such deliveries were performed on his regular patients wherein another doctor had extended a "courtesy delivery" when he was unavailable. According to local custom the regular doctor, and not the delivering doctor, would bill for the delivery.

The administrative law judge found that Dr. Brown had committed unprofessional conduct within the meaning of Business and Professions Code section 2411, in that he had knowingly signed a certificate of billing which falsely represented that he had personally performed the medical services for which he submitted bills to the Medi-Cal program. He found that Dr. Brown believed he was entitled to charge for the services, but knew that he had not personally performed the services. The administrative law judge recommended that the certificate issued to Dr. Brown be suspended for a period of six months for each of the counts, the suspensions to run concurrently.

The administrative law judge prepared a proposed decision for the Department. He found that there was no intent on the part of Dr. Brown to mislead or defraud the Medi-Cal program on any of the claims presented and that such claims were presented under the mistaken belief that such charges were permitted and authorized. He concluded that no

cause for suspension as a provider of services under the Medi-Cal program had been established under Welfare and Institutions Code section 14107. He further found that Dr. Brown had violated title 22, California Administrative Code section 51470 in that he had submitted a bill for services not personally performed. Although no intent to defraud existed such conduct was without appropriate attention to the provisions of the Medi-Cal Program. That inattention constituted gross negligence. He proposed that one count be dismissed and that Dr. Brown be suspended as a provider of services for a period of six months for violating the California Administrative Code.

The Department adopted the proposed decision of the administrative law judge as its decision, except for the order. The Department found that the charges supported a greater penalty than suspension for a six-month period, and ordered Dr. Brown suspended as a provider of services under the Medi-Cal Program for a period of one year.

## 2. *The Decision of the Board.*

Did the Board abuse its discretion by imposing discipline against Dr. Brown? The response turns on whether Business and Professions Code section 2411 must be construed to require a specific intent to deceive. Since the decision of the Board found that he did not intend to defraud or mislead the Medi-Cal program, appellant contends that the decision must be vacated.

Business and Professions Code section 2411 states that it is unprofessional conduct to "knowingly" make or sign a certificate which "falsely represents" a state of facts. Penal Code section 7, subdivision 5 defines "knowingly" as importing only knowledge that the facts exist which bring the act or omission within the provisions of the code. It does not require any knowledge of the unlawfulness of such act or omission. While Business and Professions Code section 2411 is not a penal statute, the Penal Code definition is nonetheless persuasive in determining the intent of the Legislature in using that word in other statutes. California case law has long held that the requirement of "knowingly" is satisfied where the person involved has knowledge of the facts, though not of the law. (*Steinmetz* v. *Cal. State Board of Education* (1955) 44 Cal.2d 816, 822-823 [285 P.2d 617]; *People* v. *Burns* (1888) 75 Cal. 627, 630-631 [17 P. 646]; *People* v. *Autterson* (1968) 261 Cal.App.2d 627, 632 [68 Cal.Rptr. 113]; *People* v. *McCree* (1954) 128 Cal.App.2d 196, 202-203 [275 P.2d 95].) Appellant cites no authority and we have found none which requires that

the use of the word "knowingly" be interpreted to include "with intent to deceive."

The cases appellant cites are not inconsistent with the standard California definition of the word "knowingly." In *Morissette* v. *United States* (1951) 342 U.S. 246 [96 L.Ed. 288, 72 S.Ct. 240], the United States Supreme Court considered a federal statute which specified that whoever "knowingly converts" government property is guilty of a crime. (18 U.S.C. § 641.) The court noted that Congress took pains to specify that "knowing" conversion, rather than mere conversion, would make one liable under the statute. (342 U.S. at pp. 270-271 [96 L.Ed. at p. 304].) The court held that the knowledge which was required was knowledge of the facts, though not of the law, which made the taking a conversion, and noted that knowledge is not identical with intent. (*Ibid.*) This definition of the requirement of knowledge supports rather than defeats the interpretation by the trial court of Business and Professions Code section 2411.

In *United States* v. *Chicago Express* (7th Cir. 1956) 235 F.2d 785, cited by appellant, the court held that it requires knowledge of a regulation in order to " 'knowingly violate . . . the Regulation.' " (235 F.2d at p. 786; in accord see *St. Johnsbury Trucking Company* v. *United States* (1st Cir. 1955) 220 F.2d 393, 395.) The logic of these cases is simple and straightforward. To knowingly violate a regulation one must have knowledge of the regulation. Likewise, to knowingly convert one must have knowledge of the facts which make one's action a conversion. As stated by the California Court of Appeal: "*Knowing possession* is not to be confused with criminal intent or with knowledge that an act is a violation of law. The latter signify an evil purpose. Knowing possession or 'knowingly' signifies knowledge of the existence of a fact or facts . . . ." (*People* v. *Daniels* (1953) 118 Cal.App.2d 340, 343 [257 P.2d 1038].)

■ Consistent with the above cases, we hold that "knowingly" to make or sign a certificate which "falsely represents" a state of facts, a person need only have knowledge of the falsity of the facts certified when making or signing the certificate. Our interpretation is not only in accord with statutory and decisional definitions, but will best protect the public. Factual certifications by medical doctors are used extensively throughout society for many and varied purposes. A false medical certification, regardless of the doctor's intent, may be put to great mischief. The evil therefore is not in the intent to do harm, but in falsely certifying facts which are not true. The facts of this case are illustrative. Dr. Brown states that normally overpayments are merely deducted from future payments,

but in order for adjustment to be made the facts must be known on which to base the finding that charges are not due. Had Dr. Brown certified the true facts, a review of his claim would have prevented overpayment since the Medi-Cal authorities could then have determined that payment was not due. By certifying a false statement of fact Dr. Brown hindered the discovery of the overbilling. This is true regardless of whether he intended to do so.

■ Nor do we find appellant's argument to be persuasive that the use of the words "falsely represents" requires a finding of intent to deceive. In the absence of express language, intent must be gathered from the terms of the statute construed as a whole, from the nature and character of the act to be done, and from the consequences which would follow the doing or failure to do the particular act at the required time. (*Pulcifer* v. *County of Alameda* (1946) 29 Cal.2d 258, 262 [175 P.2d 1].) The revocation or suspension of a license is not penal, the Legislature has provided for suspension to protect the life, health and welfare of the people at large and to set up a plan whereby those who practice medicine will have the qualifications which will prevent, as far as possible, the evils which could result from ignorance or incompetency or a lack of honesty or integrity. (*Furnish* v. *Board of Medical Examiners* (1957) 149 Cal.App.2d 326, 331 [308 P.2d 924, 309 P.2d 493]; *Rinaldo* v. *Board of Medical Exmrs.* (1935) 5 Cal.App.2d 345, 352 [42 P.2d 724].) The potential of harm from the existence of a false medical certificate, regardless of the intent of the doctor signing the certificate, requires that doctors refrain from signing false certificates. ■ We therefore hold that Business and Professions Code section 2411 is violated by a physician who signs or makes a medical certificate which states a false set of facts, so long as the doctor has knowledge of the falsity of the document.

The evidence supports the conclusion that Dr. Brown violated this provision. In each count Dr. Brown admitted that he signed a certification stating that he was the provider of services and in each case he admitted that he was not the physician that actually performed the surgery or delivery. Dr. Brown's contention that he billed in conformity with community practice is to no avail. The practice in the profession does not establish the standard exacted by law; the Business and Professions Code must control. (See *Stevenson* v. *State Bd. of Medical Examiners* (1970) 10 Cal.App.3d 433, 438 [88 Cal.Rptr. 815].) We note that the conduct which supports the discipline was not Dr. Brown's billing of the Medi-Cal program; it was in certifying falsely that he was the "provider of

services." Such certification was unprofessional conduct within the meaning of Business and Professions Code section 2411.

### 3. The Decision of the Department.

Appellant contends that the evidence does not support a finding that he was grossly negligent. He thereby implies that the administrative decision of the Department must be vacated. The administrative law judge's proposed decision stated that, "Although no intent to defraud existed, such conduct was without appropriate attention to the provisions of the Medi-Cal Program billing requirements and constitutes gross negligence." The Department, in increasing the discipline suggested by the administrative law judge, stated: ". . . the 'Determination of issues,' which finds the conduct of the respondent as being 'without appropriate attention to the provision of the Medi-Cal Program billing requirements and constitutes gross negligence,' supports a greater penalty than suspension from the Medi-Cal Program for a period of six months."

We agree with respondent that the discipline imposed was for submitting a bill to Medi-Cal with false representations on it and not for gross negligence. The characterization given the evidence by the administrative law judge or the Department is not dispositive. Rather, we must look to the entire record in determining whether the discipline imposed is impermissibly based.

In considering the evidence we must keep clear the reason Dr. Brown was disciplined. It was not for submitting the bills in question per se, but for submitting the bills stating that he was the "provider of services." Dr. Brown admitted that he was not the provider of services, yet he signed the statements affirming that he was the provider and submitted the bills with that certification. Such unrefuted evidence supports the imposition of discipline by the Department. Had Dr. Brown submitted bills with the information that the deliveries were "courtesy deliveries" and that the surgery bills were for his services as a supervisor or teacher, then Medi-Cal officials would have been able to determine whether the services performed by Dr. Brown were properly payable. The vice in Dr. Brown's conduct, as we have noted, was not in the submission of bills.for services not properly billable, but in the false certification of facts. The characterization of Dr. Brown's conduct as gross negligence by the Department is meaningless in this context. The discipline was not imposed for gross negligence, it was imposed for the false certification of facts.

■  Although appellant does not address the question of the interpretation to be applied to title 22, California Administrative Code section 51470, subdivision (a), we find that Dr. Brown's conduct was a cause for suspension of his right to participate in the Medi-Cal program as a provider of services. Section 51470 prohibits a provider of services from submitting a bill for services not rendered to a beneficiary. Section 51452 provides that violation of a rule or regulation is grounds for suspension. The director of the Department of Health is charged by law with prescribing rules and regulations in order to carry out the provisions of the Welfare and Institutions Code section relative to Medi-Cal. (Welf. & Inst. Code, § 14105.) The Legislature has further provided that "Participation in the medical assistance program by a provider of service is subject to suspension in order to protect the health of the recipients and the funds appropriated to carry out this chapter." (Welf. & Inst. Code, § 14123.) Section 51470 is within the director's authority. Dr. Brown does not contend that he did not submit a bill for services not rendered, and the evidence is conclusive that he did so. He thus comes within the provisions of section 51470.

### 4. Mistake of Law.

■  Dr. Brown argues, in respect to both Business and Professions Code section 2411 and title 22, California Administrative Code section 51470, that he should be allowed to rely upon mistake of law as a defense. In the opening brief appellant states that he was relying on guidelines set out in an ad hoc committee report which was approved by the Board of Governors for the Medical Society for Fresno-Madera Counties. He states that "Such committee was a pilot project *established* by Medi-Cal." (Italics supplied.) Appellant fails to cite to the record to establish that Medi-Cal was in any way involved with the ad hoc committee. In his closing brief appellant states ". . . by silence Respondent has conceded that the Ad-Hoc committee and its report constituted a body established by Medi-Cal and served as a source of official interpretation of the law." He urges that the ad hoc committee be considered a branch of an administrative agency in charge of enforcing a regulatory statute.

The situation urged by appellant is contrary to the evidence. In testifying before the administrative law judge concerning the ad hoc committee, Dr. Brown stated that the committee consisted of members of the private sector as well as Valley Medical Center staff, and that it was formed due to the difficulty in getting private doctors to participate in the teaching program. The billing procedure used for teaching physicians was

negotiated with Valley Medical Center by doctors who wished remuneration for their teaching services and was concerned only with the Valley Medical Center. Dr. Brown stated that he had no knowledge of Medi-Cal involvement in the ad hoc committee, and that he was unaware whether it had been submitted to Medi-Cal for approval. The report was merely a matter between the teaching physicians and Valley Medical Center for payment for services since the teaching physicians were threatening to refuse to perform their services without payment. The plan was not an interpretation of Medi-Cal payment schedules, and did not have reference specifically to Medi-Cal patients. Prior to the ad hoc committee report there had been no arrangement for payment of teaching physicians, and services were voluntary. The report itself makes clear that it was a Valley Medical Center arrangement, and had no connection with the Medi-Cal program.

When the standing of the ad hoc committee is placed in its true light appellant's contention that he should be allowed to rely on the defense of mistake of law fails. The ad hoc committee was not an agency charged with enforcement of the Medi-Cal regulations. It was, as suggested by respondent in argument before the trial court, a group of doctors that got together and decided how they wanted to be paid. Since the committee had no official standing appellant cannot rely upon the report of the committee as an official interpretation of the Medi-Cal regulations. Further, the report did not purport to interpret Medi-Cal regulations. It was an agreement between the teaching physicians of the area and the Valley Medical Center. Appellant cannot rely upon that agreement to support his bills to the Medi-Cal program. Finally, we note that the discipline imposed against Dr. Brown was not imposed for billing in accordance with the ad hoc committee report; it was imposed because he falsely certified that he was the provider of services in instances when he was not in fact the provider of services.

The judgments are affirmed.

Puglia, P. J., and Paras, J., concurred.