[Civ. No. 51215. First Dist., Div. One. Sept. 22, 1982.]

JOEL FORT, Plaintiff and Appellant, v.
BOARD OF MEDICAL QUALITY ASSURANCE, Defendant and
Respondent.

**COUNSEL**

O'Brien & Hallisey and Robert Patrick Murphy for Plaintiff and Appellant.

George Deukmejian, Attorney General, and David M. Galie, Deputy Attorney General, for Defendant and Respondent.

## OPINION

**ELKINGTON, J.**—Appellant Joel Fort, M.D. (hereafter Dr. Fort) is a licensed physician specializing in the practice of psychiatry. He was accused and found guilty by respondent Board of Medical Quality Assurance (hereafter Board), under Business and Professions Code sections 2361 and 2411, of knowingly assisting others in making or signing a certificate and document directly or indirectly related to the practice of medicine which falsely represented the existence or nonexistence of a state of facts. For the attending "unprofessional conduct" he was placed on probation for one year during which period he was permitted to continue practicing his profession.

Dr. Fort thereafter, under Code of Civil Procedure section 1094.5, petitioned the superior court for a writ of mandate, by which he sought to set aside the Board's decision and sanction. He has appealed from that court's judgment denying the requested relief.

The record discloses the following factual-procedural context.

California, as do most of the states of our nation, has a legislative program which extends medical aid to public assistance recipients and "medically needy" persons and families. It is commonly known as Medi-Cal and it is supported by county, state, and federal funding. The medical aid is generally furnished by physicians (including psychiatrists), who must be licensed or approved by Medi-Cal as *providers.* Such providers are compensated by Medi-Cal for services personally performed by them. Payment is made to the provider on a written claim upon which he is required to certify that he personally provided the stated services.

Medi-Cal also requires that all claims for compensation set forth the name of the provider who rendered the described services. No provider shall submit, or cause to be submitted, any false or misleading statement of material fact in connection with any claim for reimbursement. And a violation of any Medi-Cal statute, rule, or regulation, relating to

its health care services shall be deemed contrary to public health, safety, welfare, and morals.

Particularly, psychiatric services are not covered by Medi-Cal when performed by nonphysicians. And when psychiatric services are performed by a physician, they are (or at here relevant times, were) paid for by Medi-Cal at the rate of $50 for 50 minutes of such services.

Sanctions are imposed upon providers for violation of related statutes or Medi-Cal regulations in order to protect the public welfare, the medical aid program, and the public funds appropriated for it. Among the sanctions is a possible felony conviction for presenting, with intent to defraud, any false or fraudulent claim for payment by a provider. (Welf. & Inst. Code, § 14107.) Another, as here, may be imposed under the State Medical Practice Act upon a provider for unprofessional conduct for "knowingly making or signing [or assisting in making or signing] any certificate or other documents directly or indirectly related to the practice of medicine . . . which falsely represents the existence or nonexistence of a state of facts." (Bus. & Prof. Code, §§ 2361, 2411.)

The superior court, exercising its independent judgment on the entire record of the Board, had concluded that the Board's findings of fact were supported by the weight of the evidence and that such findings, in turn, were supportive of the Board's decision and the sanction thereupon imposed.

On this appeal, we "must uphold the trial court's determination as to the basis of the [Board's] action if supported by substantial evidence." (*Adcock* v. *Board of Education* (1973) 10 Cal.3d 60, 66 [109 Cal.Rptr. 676, 513 P.2d 900].)

We consider first certain uncontroverted evidence of the case.

Dr. Fort was the founder and principal actor of a nonprofit enterprise which came to be named, or rather nicknamed, after himself as Fort Help. It offered psychiatric help, without cost, to mentally and emotionally disturbed persons. The furnished help consisted mainly, if not entirely, of counseling by nonprofessional lay people who had themselves suffered mental or psychiatric problems, such as rehabilitated drug and alcohol abusers. Such persons were considered, and termed, a part of Fort Help's "staff." Before long, Fort Help encountered financial difficulties, and decided to finance its operations through Medi-Cal.

Dr. Fort became licensed and authorized by Medi-Cal as a provider, permitted to personally furnish psychiatric services and subscribe written claims upon Medi-Cal for his compensation therefor.

We advert now to the here relevant findings of fact by the Board. (Findings of fact by the superior court were waived by the parties.)

During Fort Help's years of operating under Medi-Cal, Dr. Fort, apparently busy with his outside practice of psychiatry, did not at any time "participate or involve himself with Medi-Cal [claims] or patients." He had informed Fort Help's staff that he would *not* "personally see any of the patients involved and that he [would *not*] personally sign any of the [Medi-Cal] claims forms." And he "did not participate or involve himself with Medi-Cal billing or patients."

Instead, in order that Fort Help's Medi-Cal operations and income might continue, he agreed that otherwise unauthorized, and nonprofessional, staff members might "use his name" in certifying to Medi-Cal that he, as provider, had rendered the services which members of the staff had actually performed.

"The staff thereafter submitted claims to Medi-Cal, certified by use of [Dr. Fort's] name, which reflected that specified patients had, on particular dates, received the medical service of psychotherapy ... from [Dr. Fort]. In fact, [Dr. Fort] had not rendered such service. It had been rendered by persons other than physicians, and [Dr. Fort] knew such to be the fact.

"[C]laims submitted to Medi-Cal by Fort Help and certified by use of [Dr. Fort's] name indicated that [he] had rendered 50 minutes of individual psychotherapy. In fact, these claims contained false or misleading statements of material facts, as follows: [¶] 1. The service rendered was, in fact, group therapy. [¶] 2. The service was rendered by unlicensed persons. (Nonphysicians)"

Dr. Fort authorized "others to use his name on certifying claims [to Medi-Cal] which contained false information."

Dr. Fort's "aforenoted conduct constituted a regular aspect of his participation in the operation of Fort Help from 1974 through 1976. During this period, the fiscal intermediary paid to Fort Help approximately $40,900 in 1974; $72,900 in 1975; and $52,000 in 1976 for

psychotherapy services, although [Dr. Fort] had not personally rendered such services as indicated in the claims."

In 1976, Dr. Fort learned that Medi-Cal had questioned claims presented by Fort Help. He thereupon "directed that his name no longer be used in certifying Medi-Cal claims [and] Fort Help has not participated in the Medi-Cal Program since."

We have read the record of the Board's hearing. We conclude that the above findings of fact by the Board, and the later judgment of the superior court based upon the whole record, were supported by substantial evidence. (See *Adcock* v. *Board of Education, supra,* 10 Cal.3d 60, 66.)

██ And those findings, we opine, abundantly supported the Board's determination that: "By assisting others to commit acts which would constitute a violation of Section 2411 of the Business and Professions Code were they licensed physicians, [Dr. Fort's] conduct constitutes unprofessional conduct. Cause for disciplinary action was established under Section 2361(a) of the Business and Professions Code."

We have considered other of the Board's "findings of fact," heavily relied upon by Dr. Fort, which are found irrelevant to the case's issues.

The Board additionally "found," apparently in justification, or explanation, of the mildness of its sanction, that Dr. Fort "reaped no personal financial income or gain from or through the Medi-Cal Program," that his purpose was "altruistic," and that the evidence failed to establish "fraud" or "dishonesty."

It is true that evidence before the Board established, beyond any doubt, that all of the Medi-Cal funds paid to Dr. Fort as a provider were, in one manner or another, used by Fort Help for its charitable purposes.

██ "Fraud" and "dishonesty" are closely synonymous. Fraud is defined as "a dishonest stratagem." (Webster's Third New Internat. Dict. (1961) p. 904.) It "may consist in the misrepresentation or the concealment of material facts" (*Koch* v. *Williams* (1961) 193 Cal.App.2d 537, 541 [14 Cal.Rptr. 429]), or a statement of fact made with "conscious-[ness] of [its] falsity." (*People* v. *Davis* (1952) 112 Cal.App.2d 286, 298 [246 P.2d 160].) ██ And it is the universally recognized rule

that: "'It is not essential to liability that the person charged with fraud should have received any benefit therefrom . . . .' . . . 'Liability is predicated upon the fact that [another] has been misled to his prejudice, and not that defendant has profited by his wrong.'" (*Swasey v. de L'Etanche* (1936) 17 Cal.App.2d 713, 718 [62 P.2d 753]; see also *Von Schrader v. Milton* (1929) 96 Cal.App. 192, 201 [273 P. 1074]; 37 C.J.S., Fraud, § 44, p. 297; 37 Am.Jur.2d, Fraud & Deceit, § 18, pp. 42-43; and see the authorities in those works collected.) Here, Medi-Cal, and its funding county, state, and federal governments, had been misled to their prejudice by Dr. Fort and Fort Help's staff. The fraudulently obtained money approximated $165,000.

■ Moreover, a finding of fraud, or lack of it, will be tested by the same rule as a pleading of fraud. (*In re J. T.* (1974) 40 Cal.App.3d 633, 641 [115 Cal.Rptr. 553]; *D'Andrea v. Pringle* (1966) 243 Cal. App.2d 689, 697 [52 Cal.Rptr. 606]; *Carpenter v. Froloff* (1939) 30 Cal.App.2d 400, 407 [86 P.2d 691].) *Both state a conclusion.* (*Hannon v. Madden* (1931) 214 Cal. 251, 267 [5 P.2d 4]; *Norkin v. United States Fire Ins. Co.* (1963) 237 Cal.App.2d 435, 437 [33 Cal.Rptr. 51].) An allegation or finding of fraud "adds nothing." (*Ferguson v. Gardner* (1927) 86 Cal.App. 421, 425 [260 P. 961]; it concerns no "issuable fact" (*Heller v. Dyerville Mfg. Co.* (1897) 116 Cal. 127, 134-135 [47 P. 1016]; *Martin v. Chernabaeff* (1957) 149 Cal.App.2d 593, 599 [308 P.2d 470]; *Meyer v. Selggio* (1947) 80 Cal.App.2d 161, 164 [181 P.2d 690]); and it is to be "disregarded" (*Wells v. Comstock* (1956) 46 Cal.2d 528, 532 [297 P.2d 961]; *Minaker v. California Canneries Co.* (1903) 138 Cal. 239, 244 [71 P. 110], *D'Andrea v. Pringle, supra,* 243 Cal.App.2d p. 696; *San Bernardino Valley Water Dev. Co. v. San Bernardino Valley Mun. Water Dist.* (1965) 236 Cal.App.2d 238, 270 [45 Cal.Rptr. 793]).)

■ We are thus obliged to treat what the Board termed "findings," of "honesty," and lack of evidence of "fraud" as "conclusions," which are in disagreement with its "express findings" as to Dr. Fort's conduct.

■ "'It is, of course, well settled that a general and ultimate finding . . . which is drawn as a *conclusion* from facts previously found, cannot stand if the specific facts upon which it is based do not support it.'" (*Garrison v. Edward Brown & Sons* (1944) 25 Cal.2d 473, 478 [154 P.2d 377], italics added; see also *Estate of Bielec* (1972) 8 Cal.3d 213, 221, fn. 10 [104 Cal.Rptr. 516, 502 P.2d 12, 58 A.L.R.3d 1088]; *La-Mar v. LaMar* (1947) 30 Cal.2d 898, 900 [186 P.2d 678]; *Lee v. Hiber-*

*nia Savings & Loan Soc.* (1918) 177 Cal. 656, 659 [171 P. 677]; *McKay* v. *Gesford* (1912) 163 Cal. 243, 246 [124 P. 1016]; *Matter of Forrester* (1912) 162 Cal. 493, 495 [123 P. 283]; *Sayles* v. *County of Los Angeles* (1943) 59 Cal.App.2d 295, 301 [138 P.2d 768].) "[T]he trial court's mistaken conclusion [which] is not supported by the facts found, . . . must be disregarded." (*Wells* v. *Comstock, supra*, 46 Cal.2d 528, 532.) "These are not findings of ultimate fact but conclusions of law which are not supported by any facts found. Accordingly, they must be disregarded." (*D'Andrea* v. *Pringle, supra*, 243 Cal.App.2d 689, 696.) And: "Where a conclusion, whether it be characterized as a finding . . . or a legal conclusion, is drawn from specific probative findings, it cannot stand if it is not supported or is inconsistent with the specific probative findings." (*Green* v. *Smith* (1968) 261 Cal.App.2d 392, 397-398 [67 Cal.Rptr. 796].)

Dr. Fort also argues that section 2411's requirement that its violation must be "knowingly" done mandates the elements of "wrongful intent" and "a consciousness of wrongdoing." He then insists that the administrative record does not support such a finding.

We disagree.

In *Brown* v. *State Department of Health* (1978) 86 Cal.App.3d 548 [150 Cal.Rptr. 344], a medical doctor was charged with violating section 2411. He contended that since the Board had found that "he did not intend to defraud or mislead the Medi-Cal program," he had as a matter of law not acted "knowingly," as required by the statute. The court first stated: "California case law has long held that the requirement of 'knowingly' is satisfied where the person involved has knowledge of the facts, though not of the law." (P. 554.) ▪ Then, addressing itself to the case before it, the *Brown* court held (pp. 556, 557) that: "Business and Professions Code section 2411 is violated by a physician who signs or makes a medical certificate which states a false set of facts, so long as the doctor has knowledge of the falsity of the document . . . . Such certification was unprofessional conduct within the meaning of . . . section 2411."

The rationale of *Brown* v. *State Department of Health* is seemingly borrowed from the criminal law, where it has long been held that: "The word 'knowingly' imports only a knowledge that the facts exist which bring the act or omission within the provisions of this code. It does not require any knowledge of the unlawfulness of such act or omission."

(Pen. Code, § 7, subd. 5; and see *People* v. *Burns* (1888) 75 Cal. 627, 630-631 [17 P. 646]; *People* v. *Calban* (1976) 65 Cal.App.3d 578, 585-586 [135 Cal.Rptr. 441]; *People* v. *Autterson* (1968) 261 Cal. App.2d 627, 632 [68 Cal.Rptr. 113]; *People* v. *McCree* (1954) 128 Cal.App.2d 196, 202-203 [275 P.2d 95].)

The rule iterated by *Brown* v. *State Department of Health* is reasonably apposite to the case before us. Applying it, we find the Board's determination that Dr. Fort had "knowingly" assisted in the violation of section 2411 to have been supported by its findings and the evidence.

Nor are we persuaded by the Board's finding based upon Dr. Fort's testimony—that he had authorized the false use of his name on Medi-Cal claims "only if done for a lawful purpose and in a lawful manner"—had somehow impeached its decision.

Dr. Fort had authorized the false signing of his name to Medi-Cal claims, falsely stating that he had personally provided psychiatric services. One may not reasonably escape responsibility for an unlawful, or criminal, act by the device of authorizing its commission "for a lawful purpose and in a lawful manner." And were we to undertake the difficult assumption of Dr. Fort's intent that his name be falsely, but lawfully, signed and used, it would be of no avail to him. For under the rationale of *Brown* v. *State Department of Health, supra,* 86 Cal.App. 3d 548, he had "knowingly" authorized the proscribed act. The violated statute did not require any knowledge of the *unlawfulness* of the authorized falsification. It was sufficient that "the doctor ha[d] knowledge of the falsity of the document." (*Id.,* at p. 556.)

Another of Dr. Fort's appellate contentions is stated in this manner: "It was error for the superior court to uphold the division's denial of appellant's request to be heard and to be confronted with the ex parte matter then before the division on the issue of the type of factfinder to be used in the case against him."

 The Board, as correctly stated by Dr. Fort, "was vested with the discretion to decide whether an administrative accusation against a physician should be heard by one of the regional medical quality review committees, or a five-member panel thereof, consisting principally of physicians and members of allied professions, or by an administrative law judge." It had exercised its discretion by selecting an administrative law judge to preside over Dr. Fort's disciplinary proceeding.

We interpret the instant contention as an argument that Dr. Fort was somehow denied *due process*, by denial of a voice, or hearing, as to the type of tribunal chosen to preside over the Board's later hearing. The issue appears to be one of first impression.

■ "Due Process is a flexible concept; the precise procedures necessary to prevent the arbitrary deprivation of a constitutionally protected interest vary 'with the subject-matter and the necessities of the situation.'" (*In re Bye* (1974) 12 Cal.3d 96, 103 [115 Cal.Rptr. 382, 524 P.2d 854], cert. den. 420 U.S. 996 [43 L.Ed.2d 679, 95 S.Ct. 1437].)

■ Due process requires that before one, as here, is disciplined by deprival or abridgment of the right to engage in his business or profession, he be given reasonable notice of the charges against him, notice of the time and place of a hearing, and thereafter a fair hearing on the charges. (*Kash Enterprises, Inc.* v. *City of Los Angeles* (1977) 19 Cal. 3d 294, 307-309 [138 Cal.Rptr. 53, 562 P.2d 1302]; *Endler* v. *Schutzbank* (1968) 68 Cal.2d 162, 178-180 [65 Cal.Rptr. 297, 436 P.2d 297]; 5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 299, pp. 3588-3590.)

■ Dr. Fort makes no contention that either of the hearing tribunals permitted by law in his case, was calculated to, or would, deny him the right of due process. We are advised of no authority, and we find none, acknowledging a due process right, in one so situated, to participate in the selection of a hearing tribunal, when such selection is reposed by law in an administrative agency. The record before us establishes, according to the above-noted criteria, that Dr. Fort was extended his full measure of due process in respect of the administrative proceeding conducted by the Board. He was constitutionally entitled to no more.

We have found no merit in Dr. Fort's argument that the discipline imposed upon him did not have a "rational connection with [his] fitness or capacity to practice his profession," as is constitutionally required by *Schware* v. *Board of Bar Examiners* (1957) 353 U.S. 232, 239 [1 L. Ed.2d 796, 801-802, 77 S.Ct. 752, 64 A.L.R.2d 288]. A physician's "knowing" assistance to others in making or signing a document *related to the practice of medicine* "which falsely represents the existence or nonexistence of a state of facts" manifestly has a "rational connection" with such "fitness or capacity." And we find invalid Dr. Fort's argument that the relevant statutes, and the "accusation," did not "give

notice that he could be found liable on the reconstructed concept of unprofessional conduct employed by [the Board] in this case," or that the subject statutes were somehow fatally overbroad or vague.

The judgment of the superior court is affirmed.

Racanelli, P. J., concurred.

**NEWSOM, J.**—I respectfully dissent.

I am entirely at a loss to understand how one can be penalized for furthering a fraudulent scheme in the absence of any showing whatever of knowledge or evil intent.

In fact, express findings of the respondent board negate the existence of any such mens rea, stress that Dr. Fort acted "altruistically," and establish that he authorized use of his name only for a "lawful" purpose and in a "legal" manner.

Contrary to popular opinion and the careless decisions of a number of appellate courts, no absolute liability attaches to the commission of acts which, like those at issue here, are *mala prohibitam* and not *mala in se.* (*Morissette* v. *United States* (1952) 342 U.S. 246 [96 L.Ed. 288, 72 S.Ct. 240]): evil intent cannot be inferred, but must be proved. It was not proved here.

Observing no evidence, let alone substantial evidence, of any wrongdoing by Dr. Fort, I would reverse the decision of the superior court.

I will add that, in light of the board's findings of Dr. Fort's innocent intent and professional competency, the penalties imposed upon him seem to me unjust, gratuitous and irrelevant. Particularly inapposite is an order that the time Dr. Fort spends outside California will not be applied "to the reduction of this probationary period."

Who is the craftsman of such decrees?

A petition for a rehearing was denied October 22, 1982. Newsom, J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied December 15, 1982. Bird, C. J., was of the opinion that the petition should be granted.