[No. A107367. First Dist., Div. Three. Jan. 5, 2005.]

JEFFREY THOMAS GRAY, Petitioner, v.
THE SUPERIOR COURT OF NAPA COUNTY, Respondent;
MEDICAL BOARD OF CALIFORNIA, Real Party in Interest.

## COUNSEL

Lael Kayfetz and Louis A. Biggio for Petitioner.

No appearance for Respondent.

Bill Lockyer, Attorney General, Vivien Hara and David Carr, Deputy Attorneys General, for Real Party In Interest.

## OPINION

**PARRILLI, J.**—As a condition of bail on pending criminal charges, the trial court prohibited Dr. Jeffrey Thomas Gray (Gray) from practicing medicine. The bail condition was requested by the Medical Board of California (Medical Board), which appeared without prior notice at Gray's arraignment. We hold the bail condition is not unreasonable per se but that its imposition violated Gray's procedural due process rights under the circumstances presented. We grant a writ of mandate directing the trial court to vacate its order.

### FACTUAL AND PROCEDURAL BACKGROUND

Gray is a licensed physician and surgeon, specializing in psychiatry. In a complaint filed May 12, 2004, Gray was charged with felony counts of unlawfully prescribing and possessing a controlled substance. (Health & Saf. Code, §§ 11153, subd. (a) & 11350, subd. (a).) The complaint also charges Gray with misdemeanor counts of possessing child pornography (Pen. Code, § 311.11, subd. (a)), possessing a designated controlled substance (Health & Saf. Code, § 11375, subd. (b)(2)), and sexually exploiting a patient or former patient (Bus. & Prof. Code, § 729).

Gray entered a plea of not guilty at his arraignment on May 12, 2004. The trial court reduced bail to $30,000 from the $50,000 specified in the arrest warrant,[1] and ordered Gray to stay away from the alleged victim, a former patient. Without prior notice, the Attorney General appeared for the Medical Board at the arraignment and asked that "as a condition of release on bail that

---

[1] Gray surrendered in court as soon as his attorney advised him the arrest warrant issued; his counsel asked the court to recall the warrant and reduce the bail initially set.

Dr. Gray's [medical] license be suspended so that he will not be able to prescribe drugs or have access to any kind of patients at all." The trial court agreed with the Medical Board and entered an order prohibiting Gray from practicing medicine as an additional bail condition.[2] The order also requires Gray to surrender his professional certificates to the Medical Board until the criminal charges are resolved.

Gray filed a petition for a writ of habeas corpus, challenging the bail condition. The trial court issued an order to show cause, held a hearing on July 27, 2004, and ultimately denied the petition, reasoning that public safety is the primary consideration in setting bail. The court noted the matter could have gone before the Medical Board, which presumably possessed greater expertise than the court in assessing a defendant's competence to practice medicine. The court articulated a concern that the Medical Board faces a dilemma if it commences administrative proceedings to suspend or revoke a medical license while a criminal action is pending, because a determination favorable to the defendant could have a collateral estoppel effect and preclude a criminal prosecution.

After the trial court denied his petition for a writ of habeas corpus, Gray filed a petition for a writ of habeas corpus here, arguing he was deprived of due process and that prohibiting him from practicing medicine is an unreasonable condition of bail. We construed the habeas petition as one seeking a writ of mandate[3] directing the trial court to vacate its May 12, 2004 order prohibiting Gray from practicing medicine, and we issued an order to show cause.

## DISCUSSION

### I. *The Trial Court Violated Petitioner's Due Process Rights When It Suspended His Medical License as a Condition of Bail.*

The state may not deprive a person of life, liberty, or property without due process of law. (U.S. Const., 14th Amend., § 1; Cal. Const., art. I, § 7.)

---

[2] The court reduced bail from $50,000 to $30,000 before considering the Medical Board's request to suspend Gray's medical license. Therefore, the reduction in bail did not result from Gray's acquiescence to the condition prohibiting him from practicing medicine.

[3] While habeas corpus is an appropriate vehicle for challenging the legality of bail grants or deprivations (see *In re Catalano* (1981) 29 Cal.3d 1, 8 [171 Cal.Rptr. 667, 623 P.2d 228]), we have chosen to treat the petition as one for writ of mandate because the trial court allegedly exceeded its jurisdiction and, because the issue is purely legal in nature, there is no need for an evidentiary hearing permitted by the procedures governing habeas corpus petitions. (Cf. *Alfredo A. v. Superior Court* (1994) 6 Cal.4th 1212, 1217 [26 Cal.Rptr.2d 623, 865 P.2d 56] [treating habeas petition as petition for writ of mandate]; *Thomas v. Superior Court* (1984) 162 Cal.App.3d 728, 729–730 [208 Cal.Rptr. 712] [same].)

"Due process requires that before one . . . is disciplined by deprival or abridgement of the right to engage in his business or profession, he be given reasonable notice of the charges against him, notice of the time and place of a hearing, and thereafter a fair hearing on the charges. [Citations.]" (*Fort v. Board of Medical Quality Assurance* (1982) 136 Cal.App.3d 12, 23 [185 Cal.Rptr. 836].)

■ In *Smith v. Board of Medical Quality Assurance* (1988) 202 Cal.App.3d 316, 326–329 [248 Cal.Rptr. 704] (*Smith*), the court analyzed both federal and state due process requirements in a case involving the former Board of Medical Quality Assurance, now known as the Division of Medical Quality of the Medical Board. (See *Kees v. Medical Board of California* (1992) 7 Cal.App.4th 1801, 1804, fn. 2 [10 Cal.Rptr.2d 112]; Bus. & Prof. Code, § 2003.) "Under federal constitutional analysis, [one] must first establish that the due process clause applies by showing a protected liberty or property interest." (*Smith, supra,* 202 Cal.App.3d at p. 326.) "Unquestionably, a physician has a vested property right in his or her medical license, once acquired." (*Ibid.,* citing *Berlinghieri v. Department of Motor Vehicles* (1983) 33 Cal.3d 392, 396 [188 Cal.Rptr. 891, 657 P.2d 383].) "Until a formal accusation is filed against a physician, his or her license is valid. [Citations.] Once an accusation is filed, the physician enjoys the protection of a full range of due process rights. [Citations.]" (*Smith, supra,* 202 Cal.App.3d at p. 326.)

Although the *Smith* court noted that Smith, a physician, had a vested property interest in his medical license, the court concluded no federal due process rights were at stake because the proceedings at issue—proceedings that at most would result in ordering Smith to take a competency examination—did not immediately jeopardize Smith's license. (*Smith, supra,* 202 Cal.App.3d at p. 326.) Here, the trial court's action jeopardized Gray's medical license immediately and indefinitely by "suspending" his license while the criminal proceedings were pending.[4] This action directly implicates Gray's federal due process rights.

■ As for the due process analysis under the California Constitution, the *Smith* court noted one "need not establish a property or liberty interest as a prerequisite to invoking due process protections. [Citations.] Instead, the extent to which procedural due process is available depends on a careful

---

[4] In its opposition, the Medical Board claims that Gray misconstrues the nature and effect of the trial court's order by characterizing it as a license suspension. Instead, according to the Medical Board, the court simply ordered Gray "not to practice medicine during the pendency of the criminal matter . . . ." For purposes of a due process analysis, there is no meaningful distinction between a license suspension and an order prohibiting a licensee from engaging in the profession for which the person is licensed. Apparently, the attorney representing the Medical Board at Gray's arraignment failed to see a distinction, too, because she argued that the Medical Board was asking the court to suspend Gray's license.

weighing of the private and governmental interests involved." (*Smith, supra,* 202 Cal.App.3d at p. 327.) This weighing process "generally requires consideration of (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, (3) the dignitary interest in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible governmental official, and (4) the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (*People v. Ramirez* (1979) 25 Cal.3d 260, 269 [158 Cal.Rptr. 316, 599 P.2d 622]; accord, *Smith,* 202 Cal.App.3d at p. 327.)

Of these four factors, only the governmental interest appears to have been given much weight by the trial court. Little consideration was given to Gray's private interest in his license or the risk of erroneously depriving Gray of his license. Nor did the court appear to consider the probable value of additional safeguards or the dignitary interest Gray had in receiving notice of the proposed action and the opportunity to present his side of the story. Indeed, Gray was given no advance notice of the Medical Board's recommendation that his license be suspended. The Attorney General simply appeared at Gray's arraignment with a motion in hand, giving Gray's attorney no opportunity to research the issue before arguing against it. The trial court significantly impaired Gray's freedom to pursue a private occupation without giving him notice, an effective opportunity to confront the charges or witnesses against him, or a full hearing, in violation of his due process rights.

■ The Medical Board acknowledges a number of procedures are available to immediately suspend a physician's right to practice. For example, the Medical Board may seek an interim suspension order from its Division of Medical Quality (or an administrative law judge) based upon affidavits showing the licensee has engaged in, or is about to engage in, acts violating the Medical Practice Act. (Gov. Code, § 11529, subd. (a).) The licensee must receive at least 15 days' notice of a hearing at which witnesses may be called and cross-examined. The required noticed hearing may be avoided if an affidavit establishes by admissible evidence that serious injury would result to the public before a noticed hearing could occur. In such a case, a suspension order may be issued without notice. (Gov. Code, § 11529, subds. (b), (c) & (d).) However, where an immediate license suspension is based on an evidentiary showing by affidavit, the licensee must be given a full hearing within 20 days. (Gov. Code, § 11529, subd. (c).) If an accusation is not filed with the Board within 15 days after the matter is submitted, the order is dissolved. (Gov. Code, § 11529, subd. (f).)

■ The Medical Board may also seek a temporary restraining order from a superior court restraining a licensee from practicing his or her profession. (Bus. & Prof. Code, § 125.7.) Like an interim suspension order, a temporary restraining order must be based on affidavits, and it must not be issued without notice to the licensee unless evidence establishes that serious injury would result to the public. (Bus. & Prof. Code, § 125.7, subds. (a) & (b).) If no accusation is filed with the Medical Board within 30 days after the restraining order is issued, the order is dissolved. (Bus. & Prof. Code, § 125.7, subd. (d).)

■ With both interim license suspensions and temporary restraining orders, therefore, an accusation must be filed within a short time after issuance of the order to ensure that the licensee is given all of the due process protections associated with administrative adjudications. (Bus. & Prof. Code, § 125.7, subd. (d); Gov. Code, § 11529, subd. (f); see generally Gov. Code, § 11500 et seq.) If an accusation is filed, a licensee is entitled to a hearing within 30 days and a decision within 15 days after the matter is submitted. (Bus. & Prof. Code, § 125.7, subd. (d); Gov. Code, § 11529, subd. (f).)

■ Another alternative available to the Medical Board is a superior court injunction against a physician if the Division of Medical Quality has reasonable cause to believe that allowing the physician to practice medicine would endanger the public health, safety, or welfare. (Bus. & Prof. Code, § 2312.) Such proceedings are governed by Code of Civil Procedure provisions concerning injunctive relief. (Bus. & Prof. Code, § 2311; Code Civ. Proc., § 525 et seq.)

Although the Medical Board acknowledges these procedures were available to prevent Gray from practicing medicine, it justifies its failure to use them because a decision favorable to a licensee in an administrative proceeding might have collateral estoppel effect in a later criminal prosecution. According to the Medical Board, because there are strict time limits for filing an accusation and holding a hearing after a temporary restraining order is issued or a license suspended, it is likely that the administrative matter would be fully adjudicated before the criminal action is tried. And, when an administrative agency acts in a judicial capacity and resolves disputed factual issues after the parties have had an adequate opportunity to litigate, the administrative agency's decision may have a collateral estoppel effect in a subsequent criminal trial. (See *People v. Sims* (1982) 32 Cal.3d 468, 489–490 [186 Cal.Rptr. 77, 651 P.2d 321], superseded by statute on another ground as stated in *Gikas v. Zolin* (1993) 6 Cal.4th 841, 851–852 [25 Cal.Rptr.2d 500, 863 P.2d 745].)

■ Even if a decision of the Medical Board would have a collateral estoppel effect in a later criminal trial,[5] this concern cannot justify depriving Gray of his medical license without due process. To be sure, the public safety is paramount, but some measure of due process must be given to a professional license holder before license suspension. The question is what process is due? At a minimum, the suspension must be based on evidence showing an immediate risk to the public. In a proceeding before the Medical Board involving an accusation against a physician, the standard of proof "to revoke or suspend a doctor's license should be *clear and convincing proof to a reasonable certainty* and not a mere *preponderance of the evidence.*" (*Ettinger v. Board of Medical Quality Assurance* (1982) 135 Cal.App.3d 853, 856 [185 Cal.Rptr. 601], italics in original.) In the case of an *interim* license suspension authorized by Government Code section 11529, the Medical Board must establish a "reasonable probability" that it will succeed on the merits of the accusation before a physician's license may be suspended. (Gov. Code, § 11529, subd. (e)(1); see also Stats. 1993, ch. 1267, § 58, p. 7477.) Yet, the Medical Board seems to suggest it can seek an immediate and indefinite suspension of a medical license without notice, evidence, or an adequate opportunity to litigate the issues, simply because criminal charges have been filed. We find no support for the proposition that the due process and proof required for a license suspension may be ignored when a criminal complaint has been filed against a licensee.

■ Furthermore, one of the procedural options available to the Medical Board—a preliminary injunction prohibiting a physician from practicing medicine during the time criminal charges are pending—does not appear to raise collateral estoppel concerns. There is no requirement that the Medical Board file and adjudicate an accusation after injunctive relief granted pursuant to Business and Professions Code section 2312. The Medical Board dismisses the availability of injunctive relief, however, asserting this "adjunct procedure" affords no greater due process protection than a bail review hearing, which Gray could have pursued. We disagree.

■ A party moving for injunctive relief bears the burden of showing the harm that would result if a preliminary injunction were not granted. (*Casmalia Resources, Ltd. v. County of Santa Barbara* (1987) 195 Cal. App. 827, 838 [240 Cal.Rptr. 903].) In the absence of a *verified* showing of threatened harm by the moving party, a trial court exceeds its jurisdiction by granting a preliminary injunction. (*Ancora-Citronelle Corp. v. Green* (1974) 41 Cal.App.3d 146, 150 [115 Cal.Rptr. 879].) Although the criminal complaint was signed under penalty of perjury by the chief deputy district

---

[5] We express no opinion on whether a decision of the Medical Board favorable to Gray would preclude a subsequent criminal prosecution.

attorney, there is nothing to indicate the attorney verifying the criminal complaint had any personal knowledge of the facts alleged. (See *ibid.* [injunction not permitted except on showing under oath by person with actual knowledge of supporting facts]; see also 6 Witkin, Cal. Procedure (4th ed. 1997) Provisional Remedies, § 377, pp. 305–306.) Moreover, the complaint alleges no facts supporting a conclusion that permitting Gray to practice medicine poses an imminent danger of serious injury to the public. Therefore, if the Medical Board had pursued an injunction instead of a bail condition prohibiting Gray from practicing medicine, the trial court's order would constitute an abuse of discretion because there is no competent evidence demonstrating a serious threat of injury to the public. The complaint, by itself, does not provide the required evidentiary showing.

The availability of a bail review hearing does not remedy this procedural infirmity. When a party is granted a temporary restraining order, that party still has the burden of establishing the threatened harm justifying a preliminary injunction. By contrast, an order setting bail is presumed valid, and it is up to the party seeking modification to show good cause. (See Pen. Code, § 1289.) In the case of a defendant arrested without a warrant for a bailable felony offense, bail is set at the scheduled amount for the charged offense unless a peace officer files a declaration under penalty of perjury setting forth the facts justifying an order setting a higher bail. (Pen. Code, § 1269c.) If simply raising the amount of bail requires such a verified showing, then surely an order depriving a defendant of his or her livelihood and professional license requires, at a minimum, a verified showing of imminent danger to the public.

Accordingly, prohibiting Gray from practicing medicine without prior notice, an evidentiary showing, or an opportunity to be heard violated Gray's due process rights.

## II. *Bail Conditions Must Be Reasonable.*

The Medical Board contends the trial court has authority and discretion to make all appropriate orders relating to bail, with public safety as the primary consideration. This argument requires us to determine whether a bail condition may infringe upon a professional licensee's due process rights if the condition is justified by a concern for public safety.

There is no explicit statutory authority for the trial court to do what it did here. Penal Code section 1269c authorizes a magistrate to "set bail on the terms and conditions that he or she, in his or her discretion, deems

appropriate" in the case of a defendant arrested *without* a warrant. In addition, Penal Code section 1270, subdivision (a) authorizes a court to "set bail and specify the conditions" after the court makes the requisite findings that a defendant charged with a *misdemeanor* is not entitled to an own recognizance (OR) release. Here, because Gray surrendered voluntarily pursuant to a warrant setting bail and because he is charged with felony counts, the statutes expressly authorizing bail conditions do not apply. Nevertheless, although the statutory authority is limited, there is a general understanding that the trial court possesses inherent authority to impose conditions associated with release on bail. (See generally *In re McSherry* (2003) 112 Cal.App.4th 856, 860–863 [5 Cal.Rptr.3d 497] (*McSherry*); 1 Criminal Law Procedure and Practice (Cont.Ed.Bar 7th ed. 2004) § 4.26, p. 76 ["Magistrates have the authority to set bail on conditions that they consider appropriate. [Citation.]"].) In *McSherry*, the court reasoned that if a trial court is statutorily authorized to impose bail conditions on a person charged with a misdemeanor (see Pen. Code, § 1270, subd. (a)), then the Legislature surely intended similar conditions could be imposed when a defendant facing felony charges is released on bail. (*McSherry, supra,* 112 Cal.App.4th at p. 862.) There appears to be little dispute that a trial court may impose conditions associated with release on bail; the question is whether and to what extent the court's authority is limited.

Before legislative amendments to the Penal Code in 1987, the only permissible purpose of bail was to ensure the defendant's presence in court. (*McSherry, supra,* 112 Cal.App.4th at p. 860.) Now, "public safety . . . is . . . the primary factor for the court to consider in the setting of bail." (*Id.* at p. 861; see also Pen. Code, § 1275, subd. (a).) The statute the Medical Board relies on identifies public safety as the primary consideration in *setting* or *denying* bail. (See Pen. Code, § 1275, subd. (a).) But the statute does not refer to bail conditions. (*Ibid.*) Still, the court in *McSherry* concluded that because public safety is the Legislature's overriding theme in the bail statutory framework, and because the trial court has the inherent power to impose bail conditions, it follows that the trial court may impose bail conditions intended to ensure public safety. (*McSherry, supra,* 112 Cal.App.4th at pp. 861–863.)

Bail conditions intended for public protection must be reasonable, however. (*McSherry, supra,* 112 Cal.App.4th at p. 863.) In *McSherry*, the defendant, who was convicted of misdemeanor loitering about schools, was ordered to stay 500 yards away from any school or park where children were present while the conviction was *on appeal.* (*Id.* at p. 859.) The Court of Appeal modified the 500-yard restriction to 200 yards, finding that the

500-yard restriction was unreasonable because the defendant would have violated the bail condition merely by stepping out his front door. (*Id.* at p. 863.) The court also observed it was not unreasonable to impose public protection conditions where the defendant had already been convicted and was merely awaiting appellate review. (*Id.* at p. 863, fn. 3.)

Here, the bail condition Gray challenges is not per se unreasonable. The Medical Board could legitimately achieve the same result through a variety of procedures available to it. What makes the condition unreasonable is that its imposition violated Gray's right to procedural due process, which the statutory procedures otherwise available to the Medical Board would have guaranteed. Also, unlike the defendant in *McSherry,* Gray has not been convicted of any crime. Indeed, when the trial court imposed the disputed bail condition, no preliminary hearing had even been held to determine if probable cause existed to try Gray on the charges alleged.

Had a properly noticed hearing been conducted, the trial court could have addressed the Medical Board's public safety concerns by imposing alternative conditions less restrictive than an outright prohibition on practicing medicine. There is no indication the trial court considered any such alternatives.

■ The Medical Board justified its recommendation to the trial court based upon Penal Code section 23, which authorizes state agencies that issue professional licenses to appear in any criminal proceeding if the crime charged is substantially related to the qualifications, functions, or duties of a licensee. Among other things, Penal Code section 23 authorizes a state licensing agency to "make recommendations regarding specific conditions of *probation* . . . ." (Italics added.) The statute does not authorize a licensing agency to recommend bail conditions expressly, nor does it authorize a trial court to suspend a professional license upon the recommendation of a state licensing agency.

■ The Medical Board neglects to mention the sections of the Business and Professions Code addressing medical license suspensions and other disciplinary measures that may be taken by the Medical Board after a licensee is convicted. (See Bus. & Prof. Code, §§ 2236, 2236.1, 2237, 2239.) The legislative scheme provides that a criminal *conviction* justifies license suspension or other disciplinary action. (*Ibid.*) Thus, for example, when a defendant remains incarcerated after being convicted of a felony, the defendant's license is automatically suspended, although the filing of a felony complaint, information, or indictment does not similarly trigger any automatic

or discretionary license suspension. (Bus. & Prof. Code, § 2236.1.) Likewise, a licensee's conviction of certain other crimes may constitute "unprofessional conduct" justifying discipline, but merely being charged with the same crimes does not constitute unprofessional conduct. (Bus. & Prof. Code, § 2236.) In this action, the Medical Board justifies the bail condition prohibiting Gray from practicing medicine simply because a criminal complaint has been filed. The mere filing of a felony complaint cannot justify license suspension or surrender without an evidentiary showing that failure to take such action would result in serious injury to the public. (See Gov. Code, § 11529; Bus. & Prof. Code, §§ 125.7, 2312.)

In assessing whether the conditions associated with a defendant's release while awaiting trial are reasonable, our Supreme Court's decision in *In re York* (1995) 9 Cal.4th 1133 [40 Cal.Rptr.2d 308, 892 P.2d 804] (*York*), is instructive. In *York*, the court addressed the court's power to condition OR (our recognizance) release upon an accused's agreement to submit to searches and seizures otherwise violative of Fourth Amendment rights. Although the court held that the conditions were reasonable under the circumstances, the court's justification focused on the distinction between an OR release and release on bail. (*Id.* at pp. 1149–1150.) Unlike defendants who have posted reasonable bail, "a defendant who is unable to post reasonable bail has no constitutional right to be free from confinement prior to trial and therefore lacks the reasonable expectation of privacy possessed by a person unfettered by such confinement." (*Id.* at p. 1149.) In addition, a pretrial detainee is not required to agree to conditions of an OR release, "but rather is subject to them only if he or she consents to their imposition, in exchange for obtaining OR release." (*Id.* at p. 1150.)

Here, Gray was able to post bail and therefore had a right to be free from confinement. The trial court cannot justify imposing bail conditions in a manner depriving Gray of due process or other constitutional rights on the ground that Gray would otherwise be confined and effectively deprived of those rights. Under the circumstances presented here, it was unreasonable to deprive Gray of his due process rights in connection with his professional license after he was able to post reasonable bail.

<sub>DISPOSITION</sub>

Let a peremptory writ of mandate issue directing respondent court to vacate its May 12, 2004 order prohibiting Gray from practicing as a physician and surgeon.

McGuiness, P. J., and Pollak, J., concurred.