Filed 2/7/18

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| JIMMY NAIDU et al., | |
| Petitioners, | E068437 |
| v. | (Super.Ct.No. RIF1700577) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| THE PEOPLE et al., | |
| Real Parties in Interest. | |


ORIGINAL PROCEEDINGS; petition for writ of mandate. Helio (Joe) Hernandez, Judge. Petition granted.

Ray and Bishop, Fredrick M. Ray and Lindsay M. Johnson for Petitioners.

No appearance for Respondent.

Xavier Becerra, Attorney General, James M. Ledakis, David E. Hausfeld and Christopher P. Beesley, Deputy Attorneys General, for Real Parties in Interest.

1

Petitioners, Jimmy and Uma Naidu, challenge a trial court order preventing them from using their licenses from the Contractors' State Licensing Board (CSLB) as a condition of bail. Because we agree that this condition could not have been imposed without some sort of evidentiary hearing at which it was established that the bail condition was necessary to protect the public, we grant the petition.

FACTUAL AND PROCEDURAL BACKGROUND

Petitioners allegedly sold at least one of their business licenses to one Raj Suri, whose own CSLB license was suspended, and then failed to supervise Suri despite retaining the status of "Responsible Managing Employee" in CSLB's records. On December 15, 2016, CSLB initiated an administrative proceeding to suspend or revoke petitioners' business licenses.

Petitioners are also now defendants in a prosecution charging them with fraudulent use of a contractor's license (Bus. & Prof. Code, § 7027.3) and conspiracy (Pen Code, § 182, subd. (a)(1)), at least one of which is a felony. (Pen. Code, § 182, subd. (a).) Prior to petitioners' arraignment, the CSLB filed a request that the trial court suspend petitioners' business licenses from the CSLB as a condition of bail. Petitioners filed written opposition to CSLB's request and argued against the license suspension at the bail hearing. Nevertheless, on April 5, 2017, the trial court released petitioners on their own recognizance (O.R.) but ordered their CSLB licenses suspended. To allow time to seek relief here, the trial court made the order effective May 1, 2017. The order is to remain effective "while on bail pending resolution of this criminal proceeding, or while

2

on pretrial O.R. release, or as a condition of probation and until any Contractors State License Board's disciplinary proceeding becomes final, whichever concludes last."

After receiving the petition filed here, we stayed the trial court action, requested an informal response, and set an order to show cause. In conjunction with the traverse, petitioner filed a request for judicial notice of a notice of withdrawal of CSLB's administrative charge against them. As the pendency of administrative proceedings is relevant in part for the reasons discussed *post*, we grant petitioners' request for judicial notice.

DISCUSSION

In this court, petitioners argue the trial court had no authority to suspend their CSLB licenses as a condition of O.R. release because this order infringes on their due process rights. They also contend the scope of the order containing the probation conditions constitutes cruel and unusual punishment because the license suspension could last beyond the conclusion of any criminal proceedings, even if petitioners are acquitted. Because we agree with the first premise, we do not reach the second.

This petition poses pure questions of law. (Cf., e.g., *In re Sheena K.* (2007) 40 Cal.4th 875 [challenge to probation condition can present pure question of law if resolution does not depend on the record from sentencing]; *People v. Mora* (1995) 39 Cal.App.4th 607, 615 [challenge that sentence is cruel and unusual is a question of law].) We therefore exercise de novo review. (See, e.g., *Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888.)

3

In this case, CSLB indicated it was appearing "under the authority granted by Penal Code section 23." In briefing in this court and the trial court, it also relies on Penal Code sections 1275 and 1318 as potential support for the trial court's license suspension order. We briefly discuss these statutory underpinnings before addressing due process principles, more generally.

Penal Code section 23 reads, as relevant: "In any criminal proceeding against a person who has been issued a license to engage in a business or profession by a state agency pursuant to provisions of the Business and Professions Code or the Education Code, or the Chiropractic Initiative Act, the state agency which issued the license may voluntarily appear to furnish pertinent information, make recommendations regarding specific conditions of probation, or provide any other assistance necessary to promote the interests of justice and protect the interests of the public, or may be ordered by the court to do so, if the crime charged is substantially related to the qualifications, functions, or duties of a licensee." The only published case we have found that construes this statute is *Gray v. Superior Court* (2005) 125 Cal.App.4th 629 (*Gray*). Like the *Gray* court, we conclude Penal Code section 23 does not directly authorize the license suspension that was ordered in this case.

In *Gray*, the Medical Board appeared without notice at an arraignment and persuaded the trial court to order the medical license of one Dr. Gray suspended as a condition of bail. (*Gray*, *supra*, 125 Cal.App.4th at p. 635.) With respect to Penal Code section 23, *Gray* held: "The statute does not authorize a licensing agency to recommend

4

bail conditions expressly, nor does it authorize a trial court to suspend a professional license upon the recommendation of a state licensing agency." (*Id.* at p. 643.) We agree with this conclusion, as under the doctrine of *expressio unius est exclusio alterius*, "the expression of one thing in a statute ordinarily implies the exclusion of other things." (*In re J.W.* (2002) 29 Cal.4th 200, 209 (*J.W.*).) Penal Code section 23 allows an entity like the CSLB to make recommendations about *probation*, but not about bail conditions.

The *expressio unius* doctrine, however, is not applied without resort to other interpretive aids, such as "indicia of legislative intent." (*J.W.*, *supra*, 29 Cal.4th at p. 209.) Here, CSLB asks us to take judicial notice of the California Office of Administrative Hearings, Enrolled Bill Report on Assembly Bill No. 1363 (1979-1980 Reg. Sess.) September 20, 1979 (the Enrolled Bill Report), because that document indicated an intent to create a " 'one stop' system of agency participation" whereby multiple law enforcement agencies could cooperate to protect the public from the activities of defendants who use business licenses improperly. From this, the People conclude that allowing suspension of a business license as a condition of bail would be most consistent with the intent of the Legislature.

However, the Enrolled Bill Report recommends that trial courts have the power to "prevent a *probationer (a person convicted of [a] crime)* from engaging in specified activities" regarding use of a business license because, "[t]he key to public protection is the criminal court's power to restrict the activities of a *convicted* person." (Italics added.) It also indicates that the recommended " 'one stop' system of agency participation in

criminal proceedings enlightens the criminal court and promotes appropriate restriction of the *convicted* licensee's activities" and recommends that these "restrictions can be incorporated in the court's conditions of *probation*." (Italics added.) Petitioners have not been convicted, and they are not on probation. The Enrolled Bill Report therefore does not describe them, and does not assist the People in establishing that the trial court could restrict petitioners' business licenses as a condition of bail rather than as a condition of probation. While we grant the request for judicial notice and consider the Enrolled Bill Report, we find it unpersuasive.

Having found Penal Code section 23 cannot form the basis for the order issued in these proceedings, we now consider whether the other statutes mentioned *ante* directly authorize the order preventing petitioners from using their CSLB licenses as a condition of bail, as the People contend. We take no quarrel with the idea that public safety is very important in the bail-setting process, nor could we, as Penal Code section 1275, subdivision (a)(1), explicitly provides that "[t]he public safety shall be the primary consideration." In addition, we are aware that Penal Code section 1318 authorizes imposition of "reasonable conditions" above and beyond those designed to ensure the defendant's presence at trial. (Pen. Code, § 1318, subd. (a)(2); see *In re York* (1995) 9 Cal.4th 1133, 1144.) Still, nothing in the text of Penal Code sections 1275 or 1318 directly authorizes the suspension of a business license in connection with a bail order. The People offer no legislative history on these statutes, and we have found no case finding them to directly authorize the suspension of a business license as a bail condition.

6

Consequently, we examine whether due process principles prohibit a trial court from ordering a business license suspended as a condition of bail on the theory that such a restriction is a "reasonable" (Pen. Code, § 1318, subd. (a)(2)) way to protect "[t]he public safety" (Pen. Code, § 1275, subd. (a)(1)).  In the words of the *Gray* court, "There appears to be little dispute that a trial court may impose conditions associated with release on bail; the question is whether and to what extent the court's authority is limited."  (*Gray*, *supra*, 125 Cal.App.4th at p. 642.)

Petitioners do not specify whether they assert rights under the federal or the state due process clauses.  With respect to whether the due process clauses are triggered at all when a government entity suspends a business license, we are aware that state and federal due process jurisprudence diverges; federal law requires a litigant asserting due process rights to establish a protected interest in the right that was lost due to government action, while California's approach is more " 'flexible' " and instead "depends on a careful and clearly articulated balancing of the interests at stake in each context."  (*People v. Ramirez* (1979) 25 Cal.3d 260, 268-269 (*Ramirez*); see *Gray*, *supra*, 125 Cal.App.4th at pp. 636-638.)  "It is axiomatic that the right of an individual to engage in any of the common occupations of life is among the several fundamental liberties protected by the due process and equal protection clauses of the Fourteenth Amendment."  (*Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 788; see *Endler v. Schutzbank* (1968) 68 Cal.2d 162, 170 (*Endler*).)  Therefore, the more restrictive federal standard is satisfied, and we may rely on both state and federal authorities without significant distinction.

7

In this case, we are concerned not so much with whether petitioners have established a right that is worthy of any procedural protections at all, but with what specific protections are due before the trial court can suspend their business licenses. This is because, "the state may of course regulate the qualifications of individuals employed by licensed business establishments and may discipline those licensees who jeopardize the public welfare by their hiring practices." (*Endler*, *supra*, 68 Cal.2d at p. 170.) In addition, the trial court is authorized to set O.R. release conditions that are reasonable under Penal Code section 1318, subdivision (a), and even *Gray* acknowledges that the bail condition at issue there was "not per se unreasonable." (*Gray*, *supra*, 125 Cal.App.4th at p. 643.) To borrow words from *Endler*: "We are thus concerned here not with the *ends* which might justify governmental restrictions upon the right to follow a chosen profession but only with the *means* which government must employ in enforcing admittedly permissible restraints." (*Endler*, at p. 170.)

We again find *Gray* instructive. There, a doctor who specialized in psychiatry was charged with multiple criminal counts, including possession of controlled substances (Health & Saf. Code, §§ 11153, subd. (a), 11350, subd. (a), 11375, subd. (b)(2)) and child pornography (Pen. Code, § 311.11), as well as sexually exploiting a patient or former patient (Bus. & Prof. Code, § 729). (*Gray*, *supra*, 125 Cal.App.4th at p. 635.) The Attorney General appeared at the arraignment without notice and "asked that 'as a condition of release on bail that Dr. Gray's [medical] license be suspended so that he will not be able to prescribe drugs or have access to any kind of patients at all.' " (*Id.* at

8

pp. 635-636.) The trial court agreed and ordered, as a condition of O.R. bail release, that the defendant not practice medicine. (*Id.* at p. 636.)

The Medical Board defended its decision not to use administrative procedures that would have allowed interim suspension of the defendant's license on the theory that a decision in his favor at the administrative level might have collaterally estopped the prosecution. (*Gray*, *supra*, 125 Cal.App.4th at p. 639.) The *Gray* court found this concern did not justify denying due process to Gray and explained: "Even if a decision of the Medical Board would have a collateral estoppel effect in a later criminal trial, this concern cannot justify depriving Gray of his medical license without due process. To be sure, the public safety is paramount, but some measure of due process must be given to a professional license holder before license suspension. The question is what process is due? At a minimum, the suspension must be based on evidence showing an immediate risk to the public. . . . The Medical Board seems to suggest it can seek an immediate and indefinite suspension of a medical license without notice, evidence, or an adequate opportunity to litigate the issues, simply because criminal charges have been filed. We find no support for the proposition that the due process and proof required for a license suspension may be ignored when a criminal complaint has been filed against a licensee." (*Id.* at p. 640.) The *Gray* court's conclusion was that "[t]he trial court significantly impaired Gray's freedom to pursue a private occupation without giving him notice, an effective opportunity to confront the charges or witnesses against him, or a full hearing, in violation of his due process rights." (*Id.* at p. 638.)

9

The People dismiss *Gray* as "distinguishable on its facts" because here petitioners received notice and an opportunity to respond to CSLB's request regarding bail conditions, where the defendant in *Gray* did not receive the same procedural protections.[1] In keeping with this characterization of *Gray*, they accuse petitioners of relying on dictum when they cite *Gray* for its comments on the need to submit evidence at the hearing, because in the People's view all that court held was that notice of the Medical Board's recommendation was required. Dictum is defined as " '[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive). . . .' " (*People v. Vang* (2011) 52 Cal.4th 1038, 1047, fn. 3.)

We disagree that the only holding in *Gray* was that the trial court failed to require notice of and an opportunity to respond to the Medical Board's request regarding probation conditions. While *Gray* did emphasize that the lack of notice to the defendant was problematic (e.g. *Gray*, *supra*, 125 Cal.App.4th at p. 638 ["The Attorney General simply appeared at Gray's arraignment with a motion in hand, giving Gray's attorney no opportunity to research the issue before arguing against"]), it also found a due process violation because the trial court failed to provide "an effective opportunity to confront the charges or witnesses against him, or a full hearing." (*Ibid.*) Later, after asking what process was due, the court immediately responded, without qualification: "At a minimum, the suspension must be based on evidence showing an immediate risk to the

---

[1] In addition, at the bail hearing counsel for CSLB stated: "Gray stands for the proposition that due process requires that the defendant receive notice."

10

public." (*Id.* at p. 640.) The court also described in some detail the administrative procedures that would have allowed the Medical Board to suspend the defendant's license without a court order, paying particular attention to the burden of proof it would have had to meet had it pursued them. (*Id.* at pp. 638-630.) As we read *Gray*, the court found two due process violations: the lack of notice, and the lack of evidence. We will not discount that court's opinion because petitioners argue one of the *Gray* court's theories but not the other.

Although *Gray* does not bind us, we find it persuasive with respect not only to its holding regarding notice, but also its holding regarding the need to submit evidence before a court may suspend a business license as a bail condition. We now explain why the latter holding from *Gray* is also required by due process principles, more generally.

We start with the undisputed premise that, under both state and federal law, "due process is flexible and calls for such procedural protections as the particular situation demands." (*Morrissey v. Brewer* (1972) 408 U.S. 471, 481 (*Morrissey*); see *Ramirez*, *supra*, 25 Cal.3d 260, 268 [same].) The federal due process inquiry " 'must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.' " (*Morrissey*, at p. 481.) Similarly, under California law, "the extent to which due process relief will be available depends on a careful and clearly articulated balancing of the interests at stake in each context. . . . More specifically, identification of the dictates of due process generally requires consideration of (1) the private interest that will be affected by the official

11

action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, (3) the dignitary interest in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible governmental official, and (4) the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (*Ramirez*, *supra*, 25 Cal.3d 260 at p. 269.)

In this case, as in *Gray,* "only the governmental interest appears to have been given much weight by the trial court.  Little consideration was given to [the licenseholders'] private interest in [their] license or the risk of erroneously depriving [them] of [their] license." (Gray, *supra*, 125 Cal.App.4th at p. 638.)  At the bail hearing, petitioners' counsel emphasized that suspending their business license would prevent them from working at all instead of just preventing them from working on certain jobs, in certain capacities or according to certain standards.  *Endler* noted this is an important distinction in the context of defining what interest petitioners possess and what procedural protections are due to them. (*Endler*, *supra*, 68 Cal.2d at p. 171.)  In fact, the "the breadth of the power which government [t]here exercise[d]" caused the *Endler* court, applying federal law, to hold:  "Procedural due process requires notice, confrontation, and a full hearing whenever action by the state significantly impairs an individual's freedom to pursue a private occupation." (*Id.* at p. 172.)  That court considered it "an

12

elementary requirement of justice . . . that the state may not make a man an outcast in his own profession without affording him a full opportunity to present his defense." (*Id.* at p. 173.)

Our analysis of the *Ramirez* factors yields the same result. As we have already established, petitioners have a "private interest" in continuing to practice their trade that is worthy of federal due process protection. (*Ramirez*, *supra*, 25 Cal.3d at p. 269.) There is also, however, a "dignitary" interest in having the opportunity to "present their side of the story before a responsible governmental official." (*Ibid.*) While *Ramirez* appears to frame this as an interest in ensuring that such an opportunity is present, which is a governmental function, the person who stands to lose use of a business license also undoubtedly benefits from having an opportunity to be heard. We therefore consider this interest, as well.

In our view, this dignitary interest presupposes that the trial court considers actual evidence regarding the danger petitioners allegedly pose to the public. After all, " 'The public has the right to expect its officers . . . to make adjudications on the basis of merit.' " (*Ramirez*, *supra*, 25 Cal.3d at p. 267.) Moreover, " 'immutable' " rules deriving from " 'ancient roots' " require " 'governmental action [that] seriously injures an individual' " to be based on " 'evidence.' " (*Endler*, *supra*, 68 Cal.2d at p. 172.)[2] Otherwise, "the risk of an erroneous deprivation . . . through the procedures used"

---

[2] Although *Endler* was decided under federal law (*Endler*, *supra*, 68 Cal.2d at p. 169 [relying on Fourteenth Amendment]), we see no reason why these same venerable rules would not be equally important under the California Constitution.

(*Ramirez*, *supra*, 25 Cal.3d at p. 269) seems intolerably high to us. In addition, given the importance of evidence as described immediately *ante*, the "probable value" (*ibid.*) of requiring that the suspension of a business license be based on actual evidence of risk to the public if such action is not undertaken also seems high.

As discussed *ante*, *Ramirez* also mentions a "dignitary interest" in providing notice and an opportunity to be heard. (*Ramirez*, *supra*, 25 Cal.3d at p. 269.) While CSLB gave petitioners notice of its intent to request suspension of their licenses as a condition of O.R. release, we question whether it can have meaningfully provided a platform in which petitioners could "present their side of the story" (*ibid.*) without ensuring that this platform involved the presentation of evidence regarding petitioners' alleged dangerousness.

Finally, we acknowledge the government's interest in protecting the public is also weighty; it is, in fact, the "primary consideration" in setting bail. (Pen. Code, § 1275, subd. (a)(1); see Bus. & Prof. Code, § 7000.6 ["Protection of the public shall be the highest priority for the Contractors' State License Board in exercising its licensing, regulatory, and disciplinary functions."].) Still, we reject any notion that the People have an interest in protecting the public at the expense of a criminal defendant's due process rights, and, as we have intimated, due process requires that at least some evidence of danger to the public support an order suspending a business license as part of a bail order. We do not see why it would impose an undue burden on the government if we imposed such a rule in this case. CSLB initiated the request for a license suspension, and it

14

provided counsel at the bail hearing. It was therefore already involved in this proceeding. Moreover, CSLB had initiated an administrative proceeding that also would have consumed time and resources had it followed that path instead of requesting that the court effectuate the license suspension the administrative charge requested. We do not see why requiring some presentation of evidence on this topic would pose an undue burden.

Having established that the due process clauses, both state and federal, require some presentation of evidence on the element of danger to the public, we now examine whether that rule was satisfied in this case. We conclude it was not. No witnesses testified at the bail hearing. While CSLB filed a written request for suspension of petitioners' business license, it submitted very little that might even be construed as evidence that the public would be in danger if petitioners retained use of their business license. The brief supporting the request asserts that petitioners' "conduct exhibits a profound lack of judgment, a flagrant disrespect for the health and safety of others, and a violation of the trust accorded to a licensed contractor." However, "statements by counsel are not evidence." (*People v. Richardson* (2008) 43 Cal.4th 959, 1004.)

The most we found in the way of admissible evidence supporting this assertion is the following statement in a declaration from counsel: "It is the position of the Registrar of the Contractors State License Board, that based on the[] charges [at issue], Jimmy Ratan Naidu and Uma Devi Naidu, are unsafe to work as a contractor and should be deprived of that privilege pending completion of these criminal proceedings and any proceedings by the CSLB itself. This Court's exercise of authority under sections 1275

15

(release of defendant on bail) and 1318 (regarding own recognizance [O.R.] release), in conjunction with section 23 of the Penal Code, addresses both the interest of justice and the need for prompt public protection." Read literally, this statement tells us no more than CSLB's "position" and its belief that it would be beneficial if the trial court suspended petitioners' license. Even interpreted more liberally, it does not constitute evidence that petitioners pose such a danger to the public that suspending their business licenses was necessary. (Cf. *Gray*, *supra*, 125 Cal.App.4th at p. 641 ["The [criminal] complaint, by itself, does not provide the required evidentiary showing."].) Finally, we question the extent to which counsel has sufficient personal knowledge of petitioners' interactions with Suri and other activities regarding their business licenses. (See *Id.* at pp. 640-641 ["Although the criminal complaint was signed under penalty of perjury by the chief deputy district attorney, there is nothing to indicate the attorney verifying the criminal complaint had any personal knowledge of the facts alleged."].) In essence, then, the evidence before the trial court amounted to little more than the fact that a criminal complaint had been filed.

We find, when we apply the *Ramirez* factors, that declining to require actual evidence of petitioners' dangerousness before ordering their business licenses suspended exposed them to a significant risk of erroneous deprivation despite the fact that they had a substantial private interest at stake. It also denied them the dignitary benefit of having a forum in which to be not just heard, but meaningfully heard. Although the People have a weighty interest in protecting the public, we find it would impose no undue burden to

16

require them to submit more in the way of evidence that petitioners are dangerous if allowed to maintain their license.

On balance, then, we conclude that the trial court violated due process when it suspended petitioners' business license without requiring evidence that they were dangerous. As the *Endler* court held, "Procedural due process requires notice, confrontation, and a full hearing whenever action by the state significantly impairs an individual's freedom to pursue a private occupation." (*Endler*, *supra*, 68 Cal.2d at p. 172.) Since the hearing that occurred here was not "full" in an evidentiary sense, it was insufficient to protect petitioners' due process rights.

The People rely on *Gilbert v. Homar* (1997) 520 U.S. 924, 929 (*Homar*), *Federal Deposit Insurance Corporation v. Mallen* (1988) 486 U.S. 230, 244 (*Mallen*), and *American Liberty Bail Bonds, Inc. v. Garamendi* (2006) 141 Cal.App.4th 1044 (*American Liberty*), each of which, in the People's view, "permitted imposition of a license restriction based solely on a [criminal] complaint or indictment." Under these authorities, we agree that a license suspension could, in at least some cases, be supported by no more than the return of an indictment or the filing of an information. We now explain, however, why none of these cases is authority for the proposition that the filing of a criminal complaint, alone, will support the suspension of a business license as a condition of O.R. bail release. A brief diversion into the rules governing the initiation of prosecutions in California is helpful first.

17

"The first pleading on the part of the people in the superior court in a felony case is the indictment, information, or the complaint in any case certified to the superior court under [Penal Code s]ection 859a.[3] The first pleading on the part of the people in a misdemeanor or infraction case is the complaint except as otherwise provided by law." (Pen. Code, § 949.) Penal Code section 737 further provides: "All felonies shall be prosecuted by indictment or information, except as provided in Section 859a." An "information" may not be filed until there is "a preliminary examination of the case against the defendant and an order holding him to answer made." (Pen. Code, § 738.) In a felony case, the filing of a complaint commences, not the charging of a felony, but "[t]he proceeding for a preliminary examination." (*Ibid*.) If "it appears from the [preliminary] examination that a public offense has been committed, and there is sufficient cause to believe that the defendant is guilty, the magistrate shall make or indorse on the complaint an order" holding the defendant to answer. (Pen. Code, § 872, subd. (a).) The initial pleading in a felony case can also be an indictment, which "is an accusation in writing, presented by the grand jury to a competent court, charging a person with a public offense." (Pen. Code, § 889.) In contrast, "all misdemeanors and infractions must be prosecuted by written *complaint*." (Pen. Code, § 740, emphasis added.)

---

[3] This section requires a magistrate to "certify" a case to the superior court if a defendant pleads guilty or nolo contendere, "and thereupon the proceedings shall be had as if the defendant had pleaded guilty in that court." (Pen. Code, § 859, subd. (a).)

The California Supreme Court has further explained: "A felony complaint, unlike a misdemeanor complaint, does not confer trial jurisdiction. It invokes only the authority of a magistrate, not that of a trial court. ([Pen. Code,] § 806.) . . . The felony complaint functions to bring the defendant before a magistrate for an examination into whether probable cause exists to formally charge him with a felony. Only if probable cause exists may an information invoking the trial jurisdiction of the superior court be filed. . . . The misdemeanor complaint, by contrast, is not a preliminary accusation. It is a formal charge, an accusatory pleading giving the court jurisdiction to proceed to trial." (*Serna v. Superior Court* (1985) 40 Cal.3d 239, 257 (*Serna*).) Therefore, "a defendant is not 'charged with a felony' within the meaning of [Penal Code] section 691[4] until an information or indictment is filed or a complaint is certified to the superior court pursuant to section 859a." (*People v. Nickerson* (2005) 128 Cal.App.4th 33, 38.)

We explain these rules not because they directly govern whether the trial court had the authority to suspend petitioners' business license, but because they illustrate the difference between the filing of a complaint in a felony case and the filing of an information or indictment. As we have explained, a complaint in a felony case only invites the fact-finding procedure that will determine if there is probable cause to hold the defendant to answer; the People's first "pleading" does not come into being until an information is filed, and the information may not be filed until after the preliminary

_____

**4** Penal Code section 691, subdivision (f), reads: " 'Felony case' means a criminal action in which a felony is charged and includes a criminal action in which a misdemeanor or infraction is charged in conjunction with a felony."

hearing. (*Serna*, *supra*, 40 Cal.3d at p. 257; Pen. Code, §§ 738, 872, subd. (a), 949.) Similarly, if an indictment issues, it does so only after a grand jury has found that "all the evidence before it, taken together, if unexplained or uncontradicted, would, in its judgment, warrant a conviction by a trial jury." (Pen. Code, § 939.8.) In other words, the first pleading in a felony case (i.e. an indictment or information) is supported by conclusions drawn by a magistrate or grand jury after presentation of evidence. In contrast, the complaint in a felony case is not supported by evidence but instead begins the process of introducing it.

This difference between an information or indictment and a felony complaint is why we find that neither *Mallen* nor *American Liberty* holds, as the People assert, that the single act of filing of a felony "complaint" is sufficient justification for suspending a business license without an evidentiary hearing. In fact, we conclude both cases support petitioners' position more than the People's.

In *Mallen*, the president and director of a bank was indicted under federal law on charges "that unquestionably involve[d] dishonesty or breach of trust." (*Mallen*, *supra*, 486 U.S. at p. 236.) The Federal Deposit Insurance Commission (FDIC) suspended the banker's license to conduct business on an interim basis, and he brought suit alleging the suspension of his license was unconstitutional because the post-deprivation hearing he received was not "prompt" and did not allow for oral testimony. (*Id.* at pp. 236-239.) The court noted that the banker had a protected interest and was entitled to due process protections but nonetheless found the interim license suspension constitutional. (*Id.* at

20

pp. 240-241.) As relevant to this petition, this was because: "An important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation. [Citations.] . . . [A]ppellee's suspension was supported by findings that assure that the suspension was not baseless. A grand jury had determined that there was probable cause to believe that appellee had committed a felony. Such an *ex parte* finding of probable cause provides a sufficient basis for an arrest, which of course constitutes a temporary deprivation of liberty. [Citations.] It should certainly be sufficient, when coupled with the congressional finding that a prompt suspension is important to the integrity of our banking institutions, to support the order entered in this case on January 20, 1987, even though the FDIC did not provide appellee with a separate pre-suspension hearing." (*Ibid.*, fn. omitted.)

Petitioner in this case has had no evidentiary hearing; there is neither an indictment nor an information. Such a finding of probable cause, under *Mallen*, is an important way to "assure that the suspension was not baseless." (*Mallen*, *supra*, 486 U.S. at p. 241.) The lack of evidentiary support here explains why we are not required to issue the same holding as the *Mallen* court, and the logic of *Mallen* convinces us that, without some kind of production of evidence concerning petitioners' alleged dangerousness, the People's interest in protecting the public is not "accompanied by a substantial assurance that the deprivation is not baseless or unwarranted." (*Id.* at p. 240.) *Mallen* does not require us to deny the petition.

*American Liberty* is distinguishable on essentially the same ground. In that case, the Insurance Commissioner suspended the license of one Mustafa Yousef after learning he had been charged with multiple felonies.[5] (*American Liberty*, *supra*, 141 Cal.App.4th at p. 1049.) Insurance Code section 1748.5, subdivision (f), requires a postdeprivation, but not a predeprivation, hearing upon request if an immediate suspension occurs. (See *American Liberty*, at p. 1059 [noting "postdeprivation process [often] satisfies the requirements of the Due Process Clause."].) The suspension was attacked in a writ of mandate in the trial court with partial success and appealed the portion of the judgment finding that the suspension of the license of an individual person was permissible. (*Id.* at p. 1051.) The *American Liberty* court concluded: "That the suspension in *Mallen* was based on an indictment whereas Yousef's suspension is based on an information does not render the risk here of erroneous deprivation any greater than the risk in *Mallen*."[6] (*Id.* at p. 1060.) After discussing *Homar*, which we analyze next, the court wrote: "Here, the Orange County District Attorney filed an information against Yousef. That information was filed by a body independent from the Commissioner, and it had to be based on reasonable or probable cause or it was subject to being set aside. (See Pen. Code, § 995.)

---

[5] Yousef's company, American Liberty Bail Bonds, also had its license suspended.

[6] We agree. As previously discussed, an indictment and an information are essentially indistinguishable for our purposes, since they both require a finding based on evidence that there is probable cause to believe the license holder committed the acts alleged.

Therefore, the information, like an indictment, provides 'adequate assurances' that the suspension is not unjustified." (*Ibid.*)

In other words, *American Liberty* interpreted *Mallen*, as we do, to require some form of fact-finding before the suspension of the license to practice a trade is "[]justified." (*American Liberty*, *supra*, 141 Cal.App.4th at p. 1060.) Either an information or an indictment will likely demonstrate that such fact-finding has occurred, and that there is probable cause to think a crime was committed by the defendant(s). Here, there is neither an information nor an indictment. *American Liberty*, like *Mallen*, therefore better supports the petition than the response thereto. Also, *American Liberty* is distinguishable in that there the appellant was entitled to a postdeprivation hearing. Although Penal Code section 1289 allows a trial court to hear a request to reduce bail, this procedure does not "remedy the procedural infirmity" we have highlighted because "an order setting bail is presumed valid, and it is up to the party seeking modification to show good cause." (*Gray*, *supra*, 125 Cal.App.4th at p. 641.)

Finally, we explain why even the ruling in *Homar* does not defeat the petition. In *Homar*, a state university employee who worked as a campus police officer challenged a suspension without pay and a demotion after he was arrested on drug charges. (*Homar*, *supra*, 520 U.S. at p. 927.) The court noted this temporary suspension without pay implicated the due process clause less than a license suspension, which has the effect of "depriving someone of the means of his livelihood." (*Id.* at p. 932.) Although the court noted the importance of having " 'an independent body demonstrate that the suspension

23

is not arbitrary,' " it held the arrest and formal charge with a felony was sufficient to support the suspension and demotion. (*Id.* at pp. 933-934.) In the *Homar* court's own words: "In *Mallen*, we concluded that an '*ex parte* finding of probable cause' such as a grand jury indictment provides adequate assurance that the suspension is not unjustified. [Citation.] The same is true when an employee is arrested and then formally charged with a felony. First, as with an indictment, the arrest and formal charges imposed upon respondent 'by an independent body demonstrat[e] that the suspension is not arbitrary.' [Citation.] Second, like an indictment, the imposition of felony charges 'itself is an objective fact that will in most cases raise serious public concern.' [Citation.] It is true, as respondent argues, that there is more reason to believe an employee has committed a felony when he is indicted rather than merely arrested and formally charged; *but for present purposes* arrest and charge give reason enough." (*Homar*, *supra*, 520 U.S. at p. 934, second italics added.) The qualifier we just italicized—*but for present purposes*— explains why *Homar* does not apply here.

The *Homar* court addressed not whether the filing of criminal charges, standing alone, could support the revocation of a business license, but whether it could support temporary adverse actions that were taken against an employee who was still able to work in the same trade and for the same employer. That court also emphasized that the employee's interest was less weighty than that of a business licensee facing suspension. (*Homar*, *supra*, 520 U.S. at p. 932.) " ' "[C]ases are not authority for propositions not considered" ' " (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1134), so *Homar* is not

24

authority for the proposition that a criminal complaint suffices to justify the suspension of a business license.

*Homar* is also factually distinguishable in another respect. There, the court found that "the State has a significant interest in immediately suspending, when felony charges are filed against them, employees who occupy positions of great public trust and high public visibility, such as police officers." (*Homar*, *supra*, 520 U.S. at p. 932.) The record before us does not support the conclusion that the same unique relationship exists between the State and licensed contractors.

We have now explained why, in our view, an analysis of procedural due process rules compels the conclusion that a trial court may not suspend a criminal defendant's business license as a condition of bail without some kind of evidence regarding that defendant's danger to the public if the license remains active. For the reasons stated *ante*, *Mallen*, *American Liberty*, and *Homar* do not alter this conclusion. However, those cases do inform that due process requires only a showing of probable cause that a criminal defendant poses an immediate risk of danger to the public if allowed to continue to operate under a professional license in order to ensure that the suspension is not arbitrary, baseless, or unwarranted. (*Mallen*, *supra*, 486 U.S. at pp. 240-241, 244; *American Liberty*, *supra*, 141 Cal.App.4th at p. 1060; *Homar*, *supra*, 520 U.S. at p. 934.) Unless a defendant can show that a different standard is specifically required by a statute applicable to the inquiry, we see no reason to depart from the probable cause requirement.

DISPOSITION

Petitioners' request for dismissal filed November 17, 2017, is denied.

The Peoples' request for judicial notice filed July 31, 2017 is granted.

Petitioners' request for judicial notice filed September 11, 2017 is granted.

Let a writ of mandate issue, directing the Superior Court of Riverside County to vacate its order restricting use of petitioners' CSLB licenses. Any additional trial court proceedings regarding the suspension of petitioners' business licenses shall be in accordance with this opinion.

Petitioner is directed to prepare and have the peremptory writ of mandate issued, copies served, and the original filed with the clerk of this court, together with proof of service on all parties.

CERTIFIED FOR PUBLICATION

RAMIREZ         
P. J.

We concur:


McKINSTER     
       J.


MILLER       
       J.